*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0391p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

*v.*

No. 02-2232

CHRISTOPHER ROBINSON,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-80809—Bernard A. Friedman, Chief District Judge.

Argued: June 16, 2004

Decided and Filed: November 12, 2004

Before: GILMAN and ROGERS, Circuit Judges; FORESTER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Richard D. Korn, Detroit, Michigan, for Appellant. Jennifer J. Peregord, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Richard D. Korn, Detroit, Michigan, for Appellant. Jennifer J. Peregord, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

KARL FORESTER, Chief District Judge. Christopher Robinson appeals his conviction on two counts of bank robbery and two counts of carrying a gun in connection with the robberies. He raises five assignments of error. First, Robinson argues that the district court erred when it dismissed his first indictment without prejudice, pursuant to the Speedy Trial Act, 18 U.S.C. § 3161, *et seq*. Second, Robinson maintains that the district court erred by failing to make specific findings as to whether he aided and abetted the brandishing of firearms during and in relation to a crime of violence. Third, Robinson claims that the Government's evidence was insufficient to support his conviction of aiding and abetting the use of firearms during and in relation to a crime of violence. Fourth, Robinson argues that the district court erred in admitting the affidavit of Vanessa J. Best because it deprived Robinson of his Sixth Amendment right to confront the witnesses. Finally, Robinson contends that the Bank Robbery Statute is unconstitutional on

---

[*] The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

its face because it fails to establish the requisite nexus requirement to acquire Commerce Clause jurisdiction. Because we are not persuaded by Robinson's arguments, we affirm the judgment of the district court in all respects.

## BACKGROUND

On August 5, 1999, Stanley Grundy, Ernie Johnson and Robinson robbed a National City Bank branch in Detroit, Michigan. J.A. 463-70, 593-600. Johnson and Grundy drove Grundy's car to a meeting spot close to the bank, where they met Robinson. Robinson parked his car near the bank branch, then drove the co-defendants to the bank branch in Grundy's car. After dropping off the co-defendants, Robinson left the bank in Grundy's car and drove to Grundy's house. During the robbery, Johnson watched the floor of the bank while Grundy took the money from teller drawers. Robinson allowed the co-defendants to use his automobile to leave the bank after the robbery. J.A. 463-70, 593-596. After the robbery, Grundy and Johnson drove Robinson's car to Grundy's house where the money was divided. J.A. 466-67. Both Johnson and Grundy carried guns into the bank during the robbery. J.A. 468-70; 598. Grundy testified that he left those guns in Robinson's car after the robbery. J.A. 472.

Almost three months after the first robbery, the conspirators planned to rob the same National City Bank branch for a second time. On October 25, 1999, Grundy, Johnson, Robinson and Lantz Smith again robbed the bank. J.A. 474-79; 521-25; 604-611. Grundy and Johnson rode with Robinson in his burgundy Cutlass, while Smith picked up a stolen van. They parked the Cutlass a couple of blocks from the bank and then drove the van to the bank. Robinson waited in the van while Grundy, Johnson and Smith went in and robbed the bank. J.A. 475; 521-25; 604-611. Grundy took money out of the vault, while Johnson took money from the teller drawers. Smith watched the floor of the bank while Grundy and Johnson were taking the money, and Robinson drove the getaway van. J.A. 475; 605. After the robbery, Robinson drove the co-defendants to his Cutlass, where they abandoned the van and drove the Cutlass to Stephanie Cooper's house. J.A. 525; 611-612. The co-defendants then decided to rent a hotel room so that they could distribute the money between them. Robinson went to the hotel room where they counted and divided the money. J.A. 480-82; 526-27; 611-613.

Robinson was indicted for these crimes on November 29, 1999 in the United States District Court for the Eastern District of Michigan, Southern Division, and charged with two counts of Bank Robbery, 18 U.S.C. § 2113 (a), two counts of Use of Firearms During and in Relation to a Crime of Violence, 18 U.S.C. § 824 (c) and one count of Felon in Possession of Firearms, 18 U.S.C. § 922 (g). J.A. 32-36. On September 15, 2000, Defendant filed a motion to dismiss for violation of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* J.A. 75-76. Robinson filed subsequent motions to dismiss on October 2, 2000 and December 26, 2000. J.A. 79-80; 84-91. On March 14, 2001, the district court granted Robinson's motion by dismissing the indictment without prejudice. J.A. 92.

The government filed a superseding indictment on April 18, 2001, alleging essentially the same charges. J.A. 38-41. A jury trial began on April 23, 2002. The jury found Robinson guilty on two counts of bank robbery and on two counts of use of firearms during and in relation to a crime of violence, but not guilty of being a felon in possession of firearms. On May 6, 2002, Robinson filed a motion for judgment of acquittal, requesting that the jury "verdict" that firearms had been brandished during and in relation to a crime of violence be vacated since Robinson was not charged with that offense and the jury was not instructed as to the elements of that offense. J.A. 97-102. The district court denied Robinson's motion. J.A. 103-105.

On October 7, 2002, Robinson was sentenced to a period of incarceration of 150 months on the two bank robbery convictions, 84 months on the first use of firearms during and in relation to a crime of violence and 300 months on the second use of firearms during and in relation to a crime of violence. The two use-of-firearms sentences are statutorily mandated to run consecutive to each other and to the bank robbery sentences, for a total period of imprisonment of 44½ years.

## ANALYSIS

### I.       The Speedy Trial Act Violation

Robinson argues on appeal that his indictment should have been dismissed with prejudice under the Speedy Trial Act, 18 U.S.C. § 3161-74. It is undisputed that a violation of the Speedy Trial Act occurred and that the Act demands dismissal of the first indictment against the defendant. *See* 18 U.S.C. §§ 3162(a)(2). The question before this Court is whether the district court properly dismissed the indictment without prejudice, allowing Robinson to be reprosecuted.

The Speedy Trial Act does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other. *See* 18 U.S.C. §§ 3162(a)(2); *United States v. Taylor,* 487 U.S. 326, 334, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988). Congress did, however, provide three factors for a court to consider when making this determination. They are "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.* at 333.

In *Taylor*, the Supreme Court discussed the importance of the analysis:

> Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review. Only then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy, thereby failing to act within the limits prescribed by Congress.

*Id.* at 336-37. The Court noted that the district court had not fully explicated its reasons for dismissing the indictment with prejudice, so the Court was "left to speculate in response to some of the parties' arguments pro and con." *Id.* at 337. The Court thus undertook analysis of the Speedy Trial Act factors and determined that the lower court had abused its discretion.

This Court, on multiple occasions, has had the opportunity to examine a district court's analysis of a Speedy Trial Act violation. In *United States v. Pierce*, 17 F.3d 146 (6th Cir. 1994), we reviewed a district court's dismissal of the defendant's indictment without prejudice. The Court found that the district court had discussed the three statutory factors when it dismissed the indictment without prejudice and again when it reaffirmed its previous decision. *Id.* at 148. After carefully examining the district court's discussion of the three statutory factors, the Court found that the district court had acted within its discretion in choosing to dismiss without prejudice. *Id.* at 148-49. In *Pierce,* this Court stated, "Because Congress has given specific factors to be considered, a district court that does not set forth written findings with regard to these factors has abused its discretion and will be reversed." *Id.* at 148 (relying on *Taylor*, 487 U.S. at 336). Since the district court had set forth written findings with regard to these factors, this statement is dictum. The holding in *Pierce* actually turned on whether the district court's analysis was substantially sustainable.

Likewise, in *United States v. Moss*, 217 F.3d 426 (6th Cir. 2000), the district court reviewed the three statutory factors in determining whether to dismiss the defendant's indictment without prejudice. The Court focused on the fact that the district court had implied that the defendant alone caused the delay and had failed to recognize its own role in not issuing a ruling on the defendant's pending motion. *Id.* at 431. Moreover, the Court looked at the district court's analysis of the last factor. The district court had found that reprosecution would not hinder the administration of the Speedy Trial Act, nor the administration of justice, because the defendant had not shown that the delay would prejudice him at trial. *Id.* at 431. The Court noted that the district court had failed to address its own ten-month delay in rendering its opinion and such a delay was approaching the point of being presumptively prejudicial. The district court also failed to address any non-trial prejudice suffered by the defendant. *Id.* at 432. Furthermore, we found that the

district court had not adequately addressed the impact reprosecution would have on the administration of the Speedy Trial Act. *Id*. at 432. The Court concluded that the district court's decision to dismiss the original indictment without prejudice was clearly erroneous. Although the district court had analyzed the statutory factors, this Court found that the district court had failed to adequately address all the factors because it did not acknowledge its own role in the delay.

The instant case can be distinguished from *Pierce* and *Moss* because in this case the district court failed to set forth *any* findings regarding the statutory factors. The judge's order dismissing Robinson's indictment without prejudice merely stated:

> The court having been advised in the premises and after having reviewed the pleadings filed by the parties, IT IS HEREBY ORDERED that the indictment pending against the defendant is dismissed without prejudice.

J.A. 92. It is without question that the district court should have made written findings considering the statutory factors.

Although this Court has stated in dicta that a district court that fails to address the statutory factors should be reversed, we have not previously faced a case where a district court judge completely fails to make any mention of the statutory factors. Other circuits, however, have reviewed cases where district courts fail to set forth any findings regarding the statutory factors that should be discussed in a Speedy Trial Act analysis. These courts have concluded that the fact that the district court neglected to articulate its reasons for dismissal without prejudice does not require that the district court be automatically reversed. *See, e.g., United States v. Blevins,* 142 F.3d 223, 225 (5th Cir. 1998) (citing *United States v. Jones,* 887 F.2d 492, 495 (4th Cir.1989)).

In cases where the district court fails to set forth any findings, the appropriate remedy would ordinarily be a remand to the court with instructions to provide findings that are adequate. *See United States v. Fox,* 788 F.2d 905, 909 (2d Cir.1988). However, in certain cases, instead of remanding, the appellate court in its discretion may elect to conduct a more substantive review to ensure that the judgment is supported in terms of the factors identified in the statute. *See Blevins*, 142 F.3d at 225. Where, as here, the record is sufficient for the Court to make a determination of whether the district court abused its discretion by dismissing the defendant's charges without prejudice, the Court may "undertake more substantive scrutiny to ensure the judgment is supported in terms of the factors identified in the statute." *See Blevins*, 142 F.3d at 225 (citing *Taylor*, 487 U.S. at 337); *Jones*, 887 F.2d at 495 ("where the record amply supports the district court's decision, we do not believe *Taylor* requires automatic reversal"); *United States v. Pasquale*, 25 F.3d 948, 952 (10th Cir. 1994) ("While the decision is generally the trial court's in the first instance, remand for a hearing is not required if the answer is so clear that no purpose would be served by a remand.") (internal quotation marks omitted); *United States v. Castle,* 906 F.2d 134, 137-39 (5th Cir.1990); *United States v. Miranda,* 835 F.2d 830, 834-35 (11th Cir.1988); *United States v. Simmons,* 786 F.2d 479, 485 (2d Cir.1986).

The first step in reviewing the statutory factors is for this Court to determine whether the charges against Robinson are serious. Robinson does not dispute that the charges of which he was convicted are serious. In fact, Robinson was sentenced to a total period of imprisonment of 44½ years. *See United States v. Howard*, 218 F.3d 556, 561(6th Cir. 2000) (looking at the length of a sentence to determine the seriousness of an offense for a Speedy Trial Act analysis). Given the length of the sentence, the offenses charged against Robinson were serious and favored dismissal without prejudice.

Second, this Court must consider the facts and circumstances which led to the dismissal. The government contends that Robinson's second counsel was appointed on June 7, 2000. Robinson filed his first *pro se* motion for dismissal of the indictment for violation of the Speedy Trial Act on September 15, 2000. No judicial proceedings or motions involving Robinson were outstanding during this period of 101

days.  J.A. 75; 79.  There were numerous defendants involved in this action, including one juvenile defendant.  J.A. 73.  The government states that the 31 day delay was inadvertent, due in large part to numerous motions, juvenile proceedings and plea negotiations involving both Robinson and his co-defendants.

The record indicates that the delay did not result from prosecutorial misconduct nor from any attempt to take advantage of the delay.  Because of the many defendants involved in this case, including one juvenile, the United States Attorney's Office inadvertently allowed this delay; this is not a case where the defendant has shown a pattern of negligence or bad faith on the part of the prosecutors.  Additionally, there was no "protracted and inexcusable period of inactivity on the part of the district court" that would have warranted a dismissal with prejudice.  *Howard*, 218 F.3d at  561; *but see Moss*, 217 F.3d at 431-32 (dismissing a defendant's indictment with prejudice where the district court sat on a suppression motion for ten months without explanation).  The 31-day delay by the district court, although not insubstantial, was not severe enough to warrant a dismissal with prejudice regardless of the other circumstances.  *See, e.g., U.S. v. Koory*, 20 F.3d 844, 848 (8th Cir. 1994) ("We find that a 59-day delay, while not insubstantial, is not so substantial that dismissal with prejudice is mandated regardless of the other circumstances").

The last factor this Court must consider is the impact of the reprosecution on the administration of justice.  "The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act."  *Howard*, 218 F.3d at 562 (internal citations and quotation marks omitted).

First, Robinson does not appear to have suffered actual prejudice as a result of this delay.  In *Taylor*, the Court stated, "[I]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'"  *Taylor,* 487 U.S. at 340, 108 S.Ct. 2413 (quoting *Barker v. Wingo,* 407 U.S. 514, 537, 92 S.Ct. 2182, 2195, 33 L.Ed.2d 101 (1972)).  Robinson generally alleged that his liberty was impacted by this delay.  However, Robinson does not specifically state how this 31-day delay affected his life circumstances, if at all.

The government points out that Robinson received sentence credit for the 31-day period of incarceration.  After Robinson was indicted a second time, the trial judge attempted to set an early trial date of December 2001 or January 2002.  Robinson requested a later trial date of February 5, 2002 and stipulated to a further delay in his trial date to April 23, 2002.  Considering that Robinson requested delays in setting a trial date, it does not appear that the 31-day delay at issue would have prejudiced him.  Moreover, Robinson fails to allege any particularized prejudice to his defense, such as loss of evidence due to the delay.

Secondly, as previously discussed, there was no evidence of either bad faith or a pattern of negligence on the part of the government that would warrant dismissal with prejudice.  Since Robinson did not suffer any prejudice from the delay and there was no evidence of either bad faith or a pattern of negligence on the part of the government, we find no impact on the administration of justice that would mandate dismissal with prejudice.

Thus, considering each of the three factors set out in the Speedy Trial Act, we conclude that the district court did not abuse its discretion in dismissing Robinson's indictment without prejudice.  We hasten to note, however, that the district court should have conducted this analysis in the first instance.

## II.    The District Court's Findings Regarding Defendant's Use of Firearms

Robinson contends that the district court failed to make sufficient findings with regard to the counts of aiding and abetting the brandishing of firearms during and in relation to a crime of violence. Robinson originally asserted that the trial court erred because he was not charged in the indictment with such aiding and abetting, the jury was not instructed on the elements of that offense, and the jury did not return a verdict as to that offense. However, Robinson conceded that *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) rendered this original argument moot.[1]

Since Robinson now asserts a different objection, the court will review his objection using the plain error standard. Under the plain error standard "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights.... [I]f all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal citations and quotation marks omitted).

In *Harris*, the Supreme Court stated that whether or not a firearm was brandished within the meaning of 18 U.S.C. §924 (c)(1)(A)(ii) is a sentencing factor to be determined by the judge by a preponderance of the evidence. *See Harris*, 520 U.S. at 568-69. Robinson contends that the district court failed to issue specific findings of fact as to whether Robinson aided and abetted the brandishing of firearms during and in relation to a crime of violence on August 5, 1999 and October 25, 1999.

The district court made the following statement during the sentencing hearing regarding Robinson's knowledge of the use of firearms by his co-defendants:

> And you can say, yeah, he was the [getaway] driver, but he in the Court's estimation knew exactly what was coming down. This was a planned bank robbery. They knew what they were doing. They knew what their technique was going to be. It wasn't one of these, they're going to walk into the bank and see what happens. They had a technique. The technique was to terrorize everybody, bank employees, the customers, anybody that was there to terrorize them, put them into fear of their lives, and he well knew that. The Court has no doubt about that at all.

J.A. 746-47. The district court's statement regarding Robinson's aiding and abetting in the use of firearms was not in error. The district court's statement was a sufficient statement of findings regarding this matter.[2]

## III.    The Sufficiency of the Evidence

"When reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the government and draw all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United*

---

[1] *Harris* held that subsections (ii) and (iii) of § 924(c)(1)(A), which specify enhanced sentences for brandishing or discharging a weapon during a crime of violence, represent sentencing factors only and not elements of the offense which must be charged and proved to a jury beyond a reasonable doubt. Therefore, the issue of brandishing a firearm does not have to be alleged in the indictment, submitted to the jury or proved beyond a reasonable doubt. *Harris*, 536 U.S. at 568.

[2] In addition, Robinson has filed a citation of supplemental authority regarding *Blakely v. Washington*, – U.S. –, 124 S.Ct. 2531, – L.Ed.2d – (2004), which called into question the validity of the United States Sentencing Guidelines. This Court recently granted *en banc* review of *United States v. Koch*, 373 F.3d 775 (6th Cir. 2004), in order to determine the validity of the Sentencing Guidelines. In *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (en banc), the majority of the panel concluded that *Blakely* did not require that the Court invalidate the Sentencing Guidelines on Sixth Amendment grounds.

*States v. Maliszewski*, 161 F.3d 992, 1005 (6th Cir.1998) (*quoting United States v. Riffe*, 28 F.3d 565, 567 (6th Cir.1994)). "Circumstantial evidence alone may sustain a conviction under this deferential standard of review." *United States v. Adams*, 265 F.3d 420, 423 (6th Cir. 2001).

In order to sustain a conviction of aiding and abetting the use of a firearm during and in relation to a crime of violence under 18 U.S.C. §924(c), the government must prove that "the defendant both associated and participated in the use of the firearm in connection with the underlying crime." *United States v. Morrow*, 977 F.2d 222, 231 (6th Cir. 1992).

Robinson argues that the evidence does not sufficiently support his conviction under Count II of the superseding indictment of aiding and abetting during and in relation to a crime of violence. Count II pertains to the August 5, 1999 robbery. A review of the record on appeal suggests that the district court was correct in its determination, during the sentencing phase, that Robinson aided and abetted the brandishing of firearms during and in relation to a crime of violence. The evidence shows that Robinson knew that Grundy and Johnson were going to rob the National City Bank branch on August 5, 1999, and that he transported them to the bank and allowed them to use his car as a getaway car. Robinson notes that Grundy testified that he and Lantz Smith had planned out the robbery and that Robinson was not involved until "after it was all planned out." He states that there is no evidence that the use of guns was discussed in his presence prior to the robbery or that Grundy or Johnson displayed their guns to him.

Although there might not be any direct evidence that the use of firearms was discussed in Robinson's presence, the district court did not err in finding that Robinson aided and abetted his co-conspirators in using weapons during the course of the first bank robbery. It is clear that Robinson's co-defendants brandished weapons during the August 1999 robbery. Robinson drove Grundy and Johnson to the bank and allowed them to use his car as a getaway car after the robbery. Grundy testified that he left the guns in Robinson's vehicle after the first robbery. Moreover, the men decided to again rob the same bank using the same technique in October 1999. This technique included using firearms to terrorize the bank employees and patrons. Robinson benefitted from the use of these firearms by sharing in the proceeds of the bank robbery. Each of these facts could lead a rational trier of fact to infer that Robinson knew Grundy and Johnson intended to brandish firearms in the first robbery. Thus, the district court properly concluded that Robinson aided and abetted in the brandishing of a firearm during and in relation to a crime of violence.

## IV.     The Affidavit Of Vanessa J. Best

Robinson appeals the district court's decision to admit the affidavit of Vanessa J. Best, the Assistant Executive Secretary of the FDIC, because he claims that it deprived him of his Sixth Amendment right to confront the witnesses against him. The applicable standard of review for an evidentiary ruling of the district court where the evidentiary issues relate to a claimed violation of the Sixth Amendment is the *de novo* standard. *United States v. Lloyd*, 10 F.3d 1197, 1216 (6th Cir. 1993) ("Because, here, the evidentiary issues relate to a claimed violation of the Sixth Amendment ... we review the district court's rulings *de novo*.").

Robinson objects to the admission of the certificate because it purports to testify as to the relationship for insurance purposes of the main offices of National City Bank and its subsidiary branches. Regarding the relationship between the main offices of the National City Bank and the subsidiary branch which Robinson helped to rob on two occasions, the certificate specifically states:

> 2.      I further certify that the attached record pertaining to the admission and history of the National City Bank of Michigan/ Illinois, Bannockburn, Illinois, is an official   record of the Corporation, and is attached hereto as Exhibit "A."

> 3.      I further certify that the National City Bank of Michigan/ Illinois, Bannockburn, Illinois, has a branch located at 24363 Grand River

> Avenue, Detroit, Michigan, acquired on December 31, 1994, as shown by entry in the official records of the Corporation, a copy of which is attached hereto as Exhibit "B."

> 4.     I further certify that insurance applicable to the main office  of National City Bank of Michigan/Illinois is applicable to any domestic (U.S.) branch office of National City Bank of Michigan/Illinois, including its branch located at 24363 Grand River Avenue, Detroit, Michigan.

J.A. 756.  Robinson also asserts that Ms. Best testified as an expert witness since the certificate purports to testify as to the issue of whether the bank was an insured depository institution of the Federal Deposit Insurance Corporation on August 5, 1999 and October 25, 1999, the dates of the robberies.  Regarding the insurance status, the certificate states:

> 5.     I further certify, that after a diligent search, no record or entry in the official records of the Corporation has been found to exist which terminated the status of National City Bank of Michigan/Illinois as an insured depository institution under the provisions of section 8 of the Federal Deposit Insurance Act, 12 U.S.C. 1818, and that National City Bank of Michigan/Illinois retained its status as an insured depository institution of the Federal Deposit Insurance Corporation from January 1, 1934 through and including October 25, 1999.

J.A. 757.

The government notes that it called National City Bank Assistant Vice President Michael Kohlruss to testify to the Bank's FDIC-insurance status.  The government entered into evidence a certificate verifying the Bank's insurance status which was dated October 31, 1998.  Mr. Kohlruss testified that this certificate was in effect during the dates of the robberies.  The government provided Ms. Best's certificate as additional information regarding the Bank's insured status after Robinson questioned Mr. Kohlruss's first-hand knowledge on cross-examination.  The government contends that the certificate fully complies with the strictures of Rules 803(10) and 902(1) of the Federal Rules of Evidence.

Rule 803(10) allows hearsay evidence to prove the absence of a record, report, statement or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, with evidence in the form of a certification in accordance with Rule 902 that diligent search failed to disclose the record, report, statement, or data compilation, or entry.  Paragraph 5 of the certificate, quoted above, states that a diligent search failed to disclose the record.  The certificate also complies with the provisions of Rule 902(1) since it is a document bearing a seal purporting to be that of the FDIC, a United States governmental entity.  Thus, paragraph 5 of the certificate complies with these provisions of the Federal Rules of Evidence.

Robinson also contends that Ms. Best testified as an expert because she testified as to the relationship between the main office and this subsidiary for insurance purposes.  Ms. Best's certificate merely states that the insurance certificate is applicable to both the main office and all of its branches.  However, even if it was error for the district court to admit this statement, Robinson did not suffer any prejudice from such an admission.  Mr. Kohlruss had already testified that the certificate was applicable to all of the branches of National City Bank for Michigan and Illinois.  J.A. 264.  This admission was not prejudicial since other substantially equivalent evidence of the same facts had otherwise been admitted into evidence.  *See Leonard v. Uniroyal, Inc.*, 765 F.2d 560, 567 (6th Cir. 1985) ("No error in the admission or exclusion of evidence is ground for reversal unless refusal to take such action appears to the Court to be

inconsistent with substantial justice."). Thus, the district court did not err in admitting this certificate into evidence.

Similarly, there is no need to reach the question of whether the admission of the certificate violated Robinson's right under the Confrontation Clause, because any such error was harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *see also United States v. Askarov*, 299 F.3d 896, 898 (6th Cir. 2002). As discussed above, the jury had been presented with the other testimony regarding the status of the bank as FDIC-insured. This Court therefore does not address whether a statement admitted under Fed. R. Evid. 813(10) is "testimonial" under *Crawford v. Washington*, – U.S. –, 124 S.Ct. 1374 (2004).

## V.        Commerce Clause Jurisdiction

Robinson argues that the bank robbery statute, 18 U.S.C. §2113(a), is unconstitutional on its face because it fails to establish the requisite nexus with interstate commerce. Moreover, it creates an improper presumption that the mere fact that deposits of a bank are insured by the FDIC creates a Commerce Clause nexus notwithstanding the fact that Congress has never identified the FDIC or banking as commerce per se. Because this is a question of law, the court should review the district court's determination de novo. *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir.1998).

As other circuits have recognized, after the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), the argument that a specific federal statute exceeds its power under the Commerce Clause is "popular with criminal defendants these days." *United States v. Watts*, 256 F.3d 630, 631 (7th Cir. 2001); *United States v. Spinello*, 265 F.3d 150, 153 (3d Cir. 2001). The Sixth Circuit has not specifically analyzed the constitutionality of 18 U.S.C. § 2113; however, it has rejected numerous challenges to other federal criminal statutes when the defendant has claimed that the statute is an impermissible exercise of Congress's commerce power. See *United States v. Napier*, 233 F.3d 394, 400 (6th Cir.2000) (firearms provision governing those under domestic-violence court orders, 18 U.S.C. §§ 922(g)(8)); *United States v. Smith,* 182 F.3d 452, 456 (6th Cir.1999) (Hobbs Act, 18 U.S.C. §§ 1951); *United States v. Chesney,* 86 F.3d 564, 568-70 (6th Cir.1996) (firearms provision governing convicted felons, 18 U.S.C. §§ 922(g)(1)).

Other circuits have reviewed the constitutionality of §2113. The Seventh Circuit has squarely rejected an argument identical to Robinson's that §2113 is unconstitutional on its face because it fails to establish the requisite nexus with interstate commerce. *See Watts*, 256 F.3d at 633-34. The Seventh Circuit found that "FDIC-insured banks are *fundamental* to the conduct of interstate commerce." *Id.* at 633 (emphasis added). The court recognized that Congress created the FDIC to keep open the channels of trade and commercial exchange. *Id.* (relying on *Weir v. United States*, 92 F.2d 634, 636 (7th Cir. 1937)). Since FDIC-insured banks are "instrumentalities and channels of interstate commerce[,]" their protection from robbery is within Congress's commerce power. *Id.; see also Spinello*, 265 F.3d at 157 (finding that bank robbery has "immediate, non-collateral, non-speculative effects on interstate commerce"); *U.S. v. Harris*, 108 F.3d 1107 (9th Cir. 1997) ("These financial institutions are instrumentalities and channels of interstate commerce and their regulation is well within Congress's Commerce Clause power. Section 2113 withstands constitutional analysis under *Lopez*.").

Robinson also argues that the statute creates an improper presumption that the mere fact that deposits of a bank are insured by the FDIC creates a Commerce Clause nexus. Both the Seventh and Third Circuits have addressed similar arguments and have found a sufficient Commerce Clause nexus present in §2113, independent of FDIC insurance coverage. *See Watts*, 256 F.3d at 633-34 ("Robberies of FDIC-insured banks thus have an interstate economic effect that is quite independent of the coverage that FDIC insurance extends to insured banks."); *Spinello*, 265 F.3d at 156 ("A bank robber is obviously motivated by his or her own immediate economic gain – money is, of course, "economic" – and, wholly aside from whether FDIC insurance will ultimately kick in, the victim bank and its depositors suffer immediate economic losses as

well as the disruption to their respective abilities to engage in commerce, interstate or otherwise, by such activities as lending and purchasing assets.").  Therefore, the district court did not err in finding that the federal bank robbery statute is constitutional.

## CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.