NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0616n.06
Filed: July 20, 2005

No. 04-5532

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SHERI RENE GRAVES GARNER, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

---

**Before: CLAY, GILMAN, and COOK, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge**. In September of 2000, Sheri Rene Graves Garner sustained a head injury while working as a United States Postal Service employee in Knoxville, Tennessee. Garner subsequently submitted claims to the Department of Labor requesting compensation for her disability and certifying that she was not engaged in any gainful employment. A follow-up investigation, however, revealed that Garner had been working extensively during the time that she claimed to be disabled, including operating her own Subway restaurant franchise and sharing a FedEx distribution route with her husband.

In September of 2002, a grand jury indicted Garner for multiple counts of mail fraud, making false statements to obtain federal employees' compensation, and making false statements to obtain Social Security disability benefits. Garner was convicted on all counts by a jury. The district court sentenced her to 18 months of imprisonment, which was at the bottom end of the range prescribed

by the Sentencing Guidelines. Garner subsequently appealed, alleging that her conviction was based on insufficient evidence and that her rights under the Confrontation Clause found in the Sixth Amendment to the United States Constitution were violated by the admission of her medical records. She further alleges that her sentence is unconstitutional in light of the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005), which held that the Sentencing Guidelines are no longer mandatory. For the reasons set forth below, we **AFFIRM** the judgment of the district court with regard to Garner's conviction, but **REMAND** the case for resentencing in accordance with *Booker*.

## I. BACKGROUND

### A. Factual background

Garner's job duties at the Knoxville postal substation included sorting mail into trays that were supported by a metal cage. On September 13, 2000, while she was attempting to pull the bottom tray out of the cage, a higher tray fell out and struck her on the head. Garner was subsequently taken to the hospital in an ambulance, accompanied by her supervisor, Sandra Boone. Boone later testified that the emergency room physicians told her that Garner would be able to return to work the following day.

Garner did not in fact return to work until September 25, 2000, and left after a few hours due to her injury. During Garner's absence from work, Boone filled out a form authorizing the continuation of pay for 45 days after Garner's injury. Garner subsequently submitted additional claims to the Department of Labor for compensation, including a Form CA-7 in October of 2000,

and submitted more such claims in December of 2000. In these claims, Garner asserted that she was unable to work and that she had not done any work outside of her federal job since she was injured. Garner told Betty Furry, an injury compensation specialist for the Postal Service, that "her life was basically at a stop, she could not do housework, she could not drive, she could not take care of her children, she could not take care of her marital responsibilities; that basically her life was stopped." These statements were made during a telephone conversation with Furry in December of 2000. In May of 2001, Garner confirmed to follow-up investigators that she was still not working. Garner continued to receive benefits from the Postal Service, the Department of Labor, and the Social Security Administration until August 10, 2002. The benefit payments totaled $111,065.31.

A subsequent investigation revealed that Garner had been working extensively outside of her federal job while she was collecting these disability payments. According to a vice-president and several employees of Subway Restaurants, Garner and her husband had obtained a Subway restaurant franchise in Vonore, Tennessee around the time of her accident. Garner had not only attended training sessions for new Subway owners in Milford, Connecticut in October of 2000, and danced at a Subway Christmas party in December of 2000, but had also worked actively in setting up the new restaurant. During March of 2001, her work in the restaurant included hanging wallpaper, putting up shelving in the freezers, and moving boxes of food and supplies around the store. One Subway employee also testified that Garner and her husband had a FedEx distribution route and that he had seen Garner driving a FedEx truck.

**B.      Procedural background**

A grand jury indicted Garner in September of 2002 and submitted a superseding bill of indictment in March of 2003. The indictment alleged twenty-six counts of mail fraud in violation of 18 U.S.C. § 1341, three counts of making false statements to obtain federal employees' compensation in violation of 18 U.S.C. § 1920, three counts of making a false statement of material fact to obtain Social Security disability insurance in violation of 42 U.S.C. § 408(a)(2), and two counts of making a false statement to obtain federal disability retirement payments in violation of 18 U.S.C. § 1001. During the trial, the government introduced medical records that had been prepared at Garner's request and submitted by her in order to obtain benefits.

In December of 2003, Garner was convicted on all counts by a jury. She then moved for a directed judgment of acquittal, but the district court denied her motion. Considering the evidence in the light most favorable to the government, the court held that "there was sufficient evidence for the jury to convict the defendant of all the charges."

The Presentence Report, to which neither party objected, gave a sentencing range of 18 to 24 months. Although the district court rejected Garner's motion for a downward departure, it sentenced her to the low end of the guidelines range (18 months of imprisonment), imposed a 3-year term of supervised release, ordered restitution in the amount of $111,065.31, and set a separate fine of $3,400.

## II. ANALYSIS

A. **Standard of review**

1. *Sufficiency of the evidence*

A motion to overturn a conviction based on the alleged insufficiency of the evidence cannot succeed if "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Beverly*, 369 F.3d 516, 531 (6th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). In reviewing the denial of such a motion, "we must refrain from independently judging the credibility of witnesses or the weight of the evidence . . . [and must draw] all reasonable inferences . . . in the government's favor." *Beverly*, 369 F.3d at 532-33 (citation and quotation marks omitted).

### 2.     *Confrontation Clause issue*

"[W]here the evidentiary issues relate to a claimed violation of the Sixth Amendment," we review the district court's ruling de novo. *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir. 2004); *see also United States v. Lloyd*, 10 F.3d 1197, 1216 (6th Cir. 1993) (applying a de novo standard "[b]ecause, here, the evidentiary issues relate to a claimed violation of the Sixth Amendment").

### 3.     *Sentencing issue*

We "review[] a district court's interpretation of the Sentencing Guidelines de novo." *United States v. Jackson*, 401 F.3d 747, 748 (6th Cir. 2005). If the defendant fails to challenge his sentence before the district court, however, "we review the district court's decision for plain error." *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005).

## B.     Sufficiency of the evidence

Garner argues, without citing any authority, that "the trial court erred by denying the Motion

for Judgment of Acquittal on the grounds of insufficiency of the evidence." She claims that "the

medical proof presented on [her] behalf . . . was the sole competent <u>medical</u> proof regarding whether

Garner was eligible for . . . benefits." (emphasis in original)

But the charges of mail fraud and the making of false statements to obtain benefits did not

depend on whether Garner had a disabling medical condition. Rather, they depended on whether

she was lying when she claimed that she was not working outside of her federal job. For example,

the first count of mail fraud is based on Garner's submission of a CA-7 Form in October of 2000,

in which she "marked 'no' in answer to the question 'Have you worked outside your federal job

during the periods claimed (Include salaried, self-employed, commissioned, volunteer, etc.)'

knowing that she had in fact attended training for operation of the Subway Sandwich Shop during

October, 2000." The second mail-fraud count is based on her submission of a similar document in

December of 2000, with the remaining 24 mail-fraud counts resulting from her acceptance of

individual workers' compensation checks. A conviction for mail fraud is premised on 18 U.S.C. §

1341, which provides in pertinent part as follows:

> Whoever, having devised . . . any scheme or artifice to defraud, or for obtaining
> money or property by means of false or fraudulent pretenses, . . . for the purpose of
> executing such scheme or artifice or attempting so to do, places in any post office or
> authorized depository for mail matter, any matter . . . to be sent or delivered by the
> Postal Service . . . shall be fined under this title or imprisoned not more than 20
> years, or both.

Likewise, the charges of making false statements to obtain federal employee's compensation

and Social Security benefits are based on occasions when Garner told federal investigators that she

was not working outside of her federal job. She also submitted written claims to this effect. The making of false claims for benefit payments is a violation of 18 U.S.C. § 1920, which provides in pertinent part as follows:

> Whoever knowingly and willfully falsifies, conceals, or covers up a material fact, or makes a false, fictitious, or fraudulent statement or representation, or makes or uses a false statement or report knowing the same to contain any false, fictitious, or fraudulent statement or entry in connection with the application for or receipt of compensation or other benefit or payment under subchapter I or III of chapter 81 of title 5, shall be guilty of perjury, and on conviction thereof shall be punished by a fine under this title, or by imprisonment for not more than 5 years, or both. . . .

To prove that Garner was guilty of these charges, the government was required to submit evidence that the claims she made in order to obtain benefits were false. The government submitted evidence showing that Garner had certified that she was unable to work, and there is no dispute that she received benefits predicated on an inability to work until August of 2002. Several government witnesses testified that Garner was doing physically taxing work at her Subway restaurant throughout this period, and at least one asserted that Garner was driving a FedEx truck as well. Government witnesses described Garner traveling to Subway training meetings, installing shelving in a freezer, putting up wallpaper, and even dancing at a December 2000 Subway Christmas party. Drawing "all reasonable inferences . . . in the government's favor," *Beverly*, 369 F.3d at 532-33, this evidence was more than sufficient for the jury to convict Garner of the charges alleged by the grand jury.

**C.     Confrontation Clause issue**

Garner also claims that the admission of several medical records prepared by physicians who did not testify at trial was a violation of her right "to be confronted with the witnesses against h[er]."

U.S. Const. amend. VI. In support of her argument, she cites *Crawford v. Washington*, 541 U.S. 36, 68 (2004), in which the Supreme Court held that the admission of a testimonial statement against a criminal defendant, without an opportunity to cross-examine the witness, "is sufficient to make out a violation of the Sixth Amendment." Because the present case is before us on direct appeal, we will assume that *Crawford* is applicable. *See United States v. Hough*, 276 F.3d 884, 890 (6th Cir. 2002) (applying a new rule of criminal procedure because "this case is before us on direct appeal and [the] Defendants are entitled to retroactive consideration of their claim").

But even assuming *Crawford's* applicability, Garner's medical records were properly admitted. The Supreme Court in *Crawford* drew an explicit contrast between testimonial and nontestimonial statements, and did not extend the same protection to nontestimonial statements:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does [*Ohio v*.] *Roberts* [448 U.S. 56 (1980)], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial."

*Crawford*, 541 U.S. at 68.

In a case interpreting *Crawford*, this court has provided a test for "[t]he threshold determination . . . [of] whether the statements [at issue] . . . are 'testimonial' in nature." *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004). The test focuses on "whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Id*. at 675; *see also* Richard D.

Friedman, *Confrontation: The Search for Basic Principles*, 86 Geo. L.J. 1011, 1042 (1998) (proposing a similar test to distinguish testimonial from nontestimonial statements; cited approvingly by this court in *Cromer*).

In the present case, the records at issue were prepared at Garner's request and were submitted by her in order to obtain benefits. The physicians involved were not preparing their reports in the context of a criminal prosecution, and had no reason to "anticipate [their] statement[s] being used against [Garner] in investigating and prosecuting the crime." *Cromer*, 389 F.3d at 675. Because the statements were clearly not testimonial, we need not address the government's contention that "[t]he medical records were admitted for the sole purpose of explaining how the decision was made to grant benefits, and why the decision was made to initiate an investigation into [Garner's] statements claiming she was not working." The introduction of these nontestimonial medical records thus did not violate Garner's rights under the Confrontation Clause.

**D.     *Booker* issue**

Garner's final argument—that her sentence is unconstitutional in light of the Supreme Court's recent determination that the Sentencing Guidelines are no longer mandatory—is more persuasive. *See United States v. Booker*, 125 S. Ct. 738, 769 (2005) (holding that the portion of the Sentencing Act that requires judges to sentence defendants in accordance with the Sentencing Guidelines is unconstitutional); *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005) (remanding in order to resentence the defendant, after noting that the treatment of the Sentencing Guidelines as mandatory "was correct at the time [of sentencing], but now, because [§] 3553(b)(1)

has been excised and severed under *Booker*, the district court erred by treating the Guidelines as mandatory when it sentenced [the defendant]").

As this court noted in *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), "even if we conclude that the evidence [upon which the judge based his sentencing determination] is 'overwhelming and essentially uncontroverted' we cannot know the length of imprisonment that the district court judge would have imposed pursuant to this evidence following *Booker*." *Id*. at 380 n.3 (quoting *United States v. Cotton*, 535 U.S. 625, 633 (2002)). This is especially true where the court sentences the defendant at the low end of the sentencing range, as the district court made a point of doing in the present case. *See United States v. Hamm*, 400 F.3d 336, 340 (6th Cir. 2005) ("Based upon the district court's imposition of a sentence at the low end of the range[,] . . . we believe that the court might have sentenced [the defendant] to fewer . . . months in prison if it had felt that it were free to do so.").

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court as to Garner's conviction, but **REMAND** the case for resentencing in accordance with *Booker*.