**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0106n.06

**Case No. 17-5370**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 02, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff –Appellee,* | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| DANIEL LEE DILG, | ) | |
| | ) | |
| *Defendant –Appellant* | ) | OPINION |

BEFORE: COLE, Chief Judge; WHITE and BUSH, Circuit Judges.

COLE, Chief Judge. Over seven months passed before the district court ruled on Daniel Lee Dilg's suppression motion. The district court agreed that the ensuing delay in bringing the defendant to trial exceeded the seventy-day limit imposed under the Speedy Trial Act of 1974 and that it must dismiss the charges against him. *See* 18 U.S.C. § 3161 *et seq.* Because it did so without rather than with prejudice, Dilg contends that the district court abused its discretion. In the absence of a more substantial showing of prejudice or administrative neglect, we cannot agree. We affirm.

## I. BACKGROUND

In June 2010, Dilg was charged in an indictment (and subsequent superseding indictment) with four drug offenses: (1) conspiracy to manufacture methamphetamine, (2) possession of materials used in the manufacture of methamphetamine, (3) attempt to manufacture methamphetamine, and (4) maintaining premises for the manufacture of methamphetamine.

Soon after the indictment, Dilg traveled to Washington State where he was arrested several months later. He was then returned to the Eastern District of Tennessee, where he made his initial appearance on February 22, 2011. Although the district court advised him of his right to seek pretrial release, he never availed himself of that right and remained incarcerated throughout all pretrial proceedings.

A jury trial was initially set to begin in late March 2011. But Dilg moved to continue the trial so that he could adequately prepare a defense. The district court granted the motion the next day and set a new trial date for the beginning of May 2011. In its order, the district court made appropriate "ends of justice" findings, so as to exclude the approximately one-and-a-half-month trial delay from the speedy-trial calculation. *See* 18 U.S.C. § 3161(h)(7)(A).

Before the rescheduled trial date, Dilg moved to suppress certain statements he made to police, and the matter was referred to a magistrate judge. In the meantime, the district court continued the trial until after a ruling on the motion. The magistrate judge issued his report and recommendation denying the motion several months later, and the briefing for Dilg's objections to the report and recommendation was completed in early August 2011.

Over seven months passed before the district court ruled on the motion in late March 2012. In its order, the district court overruled Dilg's objections and adopted the magistrate's report and recommendation. On that same day, the district court issued another ends-of-justice continuance of the trial to the beginning of May 2012. And in the interim, Dilg's unexpected refusal to meet with his attorney prompted his attorney to move for instructions from the court— a dispute the court resolved over the course of a week.

## II. PROCEDURAL HISTORY

Dilg moved to dismiss the indictment with prejudice soon after the district court's ruling on his suppression motion. In his motion, he asserted that the delay in bringing him to trial

exceeded the seventy-day limit imposed by the Speedy Trial Act. The government agreed, but insisted that the dismissal should be without prejudice.

The district court agreed with the government and dismissed the indictment without prejudice. Dilg was then reindicted and later convicted on the same counts in proceedings before a different district judge.

Dilg timely appealed.

### III. ANALYSIS

We apply a modified abuse-of-discretion standard when reviewing a district court's decision to dismiss with or without prejudice under the Speedy Trial Act. *United States v. Pierce*, 17 F.3d 146, 148 (6th Cir. 1994). Under that standard, we must ensure that the district court properly considered the required statutory factors: (1) the seriousness of the offense, (2) the facts and circumstances which led to the dismissal, and (3) the impact of reprosecution on the administration of the Speedy Trial Act and justice. *United States v. Taylor*, 487 U.S. 326, 337 (1988); 18 U.S.C. § 3162(a)(2). So long as the district court properly considered those factors and its supporting factual findings are not clearly erroneous, we will not lightly disturb its judgment of how those considerations balance. *Taylor*, 487 U.S. at 337. Nor will we do so where the record amply supports the district court's decision. *See United States v. Robinson*, 389 F.3d 582, 588 (6th Cir. 2004).

#### A. Seriousness of the Offense

We find no error in—and Dilg does not challenge—the district court's conclusion that the seriousness of his drug offenses weighs in favor of dismissal without prejudice. We have categorically labeled drug offenses as serious. *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000). And we defer to the district court's factual finding that the offenses in this matter were

"extremely serious," so as to weigh more heavily in favor of dismissal without prejudice. (Mem., R. 136, PageID 511.)

### B. Facts and Circumstances Leading to Dismissal

But the district court did improperly consider the facts and circumstances leading to dismissal. Under the Speedy Trial Act, a district court must dismiss a defendant's indictment if his trial does not commence within seventy nonexcludable days of his initial appearance or the filing of the indictment, whichever occurs later. 18 U.S.C. § 3161(c)(1), (h). In other words, the relevant "facts and circumstances" are those that led to the passing of more than seventy nonexcludable days. In this matter, that delay is measured from the date of Dilg's initial appearance on February 22, 2011. *Id.* § 3161(c)(1).

That delay was attributable solely to the district court. The district court waited over seven months, between early August 2011 and late March 2012, before ruling on Dilg's suppression motion. It is true that the initial thirty days after the motion was taken under advisement are excludable. *See* 18 U.S.C. § 3161(h)(1)(H). But the government does not dispute that it was during the subsequent six-month period that trial was delayed beyond the seventy-day mark.

Although it acknowledged that it was partly to blame, the district court clearly erred in attributing the "substantial majority" of the delay to Dilg. (Mem., R. 136, PageID 514.) In support of its finding, the district court cited three specific instances of Dilg's conduct. But each of the attendant periods of delay consisted entirely of excludable time under the Speedy Trial Act. The nearly nine-month delay between the indictment and initial appearance, while attributable to Dilg's decision to travel to Washington State, occurred before the speedy-trial clock began ticking. *See* 18 U.S.C. § 3161(c)(1). And his motions for a continuance and to suppress evidence tolled the speedy-trial clock, like all pretrial motions, as did the resulting ends-

of-justice continuance of the trial. *See id.* § 3161(h)(1)(D), (7)(A). Nor could he be faulted for the one-week delay resulting from his attorney's pretrial motion for instructions, occurring as it did after the speedy-trial clock had already run past the seventy-day limit—and in any event tolling the clock. *See id.* § 3161(h)(1)(D).

In contrast to the district court, we conclude that this second factor tips in favor of dismissal with prejudice. We agree with the district court's conclusion that this factor should generally be weighed less heavily where, as here, the purported reason for the delay is an overcrowded docket. *United States v. Blank*, 701 F.3d 1084, 1089 (5th Cir. 2012). But that general presumption applies with less force in this matter. The district court's seven-month delay comes close to demonstrating a "truly neglectful attitude." *See Taylor*, 487 U.S. at 338; *Moss*, 217 F.3d at 430–32. Nor was this an isolated instance of delay by the district judge. *See United States v. Johnson*, No. 1:08-cr-97, slip op. at 8 (E.D. Tenn. Apr. 6, 2010) (Mattice, J.) (acknowledging that a Speedy Trial Act violation resulting from a ten-month delay in ruling on a defendant's motion was solely the fault of the district court), *aff'd*, No. 10-6426 (6th Cir. Apr. 6, 2012). Greater weight is therefore accorded to this factor than may be warranted for a shorter, isolated instance of delay.

### C. Impact of Reprosecution on the Administration of the Speedy Trial Act and Justice

As with the first factor, however, we find no error in the district court's conclusion that the impact of reprosecution weighs in favor of dismissal without prejudice. Prejudice to the defendant is one of two main considerations under this factor because it is the adverse effects of inordinate delay that the Speedy Trial Act sought to remedy. *See Robinson*, 389 F.3d at 589. The other main consideration is the deterrent effect of a with-prejudice dismissal on the government's—including the district court's—repeated violations of the Speedy Trial Act. *See*

*id.* (considering "whether the government engaged in prosecutorial misconduct that must be deterred"); *Moss*, 217 F.3d at 432 (noting that the purposes of the Speedy Trial Act "would be thwarted if courts do not adjust their day-to-day procedures to comply with its requirements").

We find no clear error in the district court's factual finding of minimal prejudice to the defendant. Dilg does not identify any specific prejudice to his defense on the merits. And the district court discounted the severity of any nontrial prejudice from prolonged incarceration because Dilg never sought pretrial release, despite the court's invitation to do so. Instead, it found his behavior more consistent with a tactical decision to remain incarcerated either to mount a speedy-trial challenge or to receive credit against his sentence for time served. Under our deferential standard of review, we cannot say that this finding was clearly erroneous.

Nor does the length of delay warrant a presumption of prejudice. *See Moss*, 217 F.3d at 431–32. For claims under the Sixth Amendment right to a speedy trial, we have held that a nine-month delay is not so "uncommonly long" as to be presumptively prejudicial. *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). Assuming that context is analogous, as we did in *Moss*, we cannot conclude that a shorter, seven-month delay is presumptively prejudicial. *See Moss*, 217 F.3d at 431 (citing *United States v. Mundt*, 29 F.3d 233, 235 (6th Cir. 1994)).

We nonetheless accord less weight to this factor than did the district court. In considering the deterrent effect of a with-prejudice dismissal, the district court did not measure its effect on the court's own compliance with the Speedy Trial Act. *See Moss*, 217 F.3d at 432. Instead, the district court only considered its effect on the prosecutor, despite the court's culpability for the violation. And we cannot conclude that a with-prejudice dismissal would not have a greater deterrent effect on the district judge's compliance. We are mindful, however, that "[d]ismissal without prejudice is not a toothless sanction" because it "forces the Government to

obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *Taylor*, 487 U.S. at 342.  In the absence of a more substantial showing of prejudice or more culpable conduct, this third factor tips ever so slightly in favor of dismissal without prejudice.

*          *          *

We conclude that the district court did not abuse its discretion in dismissing the indictment without prejudice.  Although a more substantial showing of prejudice or administrative neglect may have tipped the scales in favor of a prejudicial dismissal, we find ample support in the record for the district court's balance of the statutory factors in favor of dismissal without prejudice.  *See Robinson*, 389 F.3d at 588.

**IV. CONCLUSION**

We affirm the judgment of the district court.