NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0345n.06

No. 24-3118

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 15, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| EDDIE LEE POPE, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

KETHLEDGE, Circuit Judge. A jury convicted Eddie Lee Pope of possessing 446 grams of methamphetamine with intent to distribute it. He challenges that conviction on five grounds. We reject his arguments and affirm.

I.

One night in October 2020, Ohio State Highway Patrol Trooper Ryan Noblet was driving along Route 23 in Northwest Ohio when he saw a Chevy Malibu traveling well below the speed limit and driven by a man leaning far back in his seat. Noblet began to follow the vehicle because he thought the driver might be impaired. The driver veered out of his lane and touched the "fog line" on the side of the road. Noblet then pulled over the vehicle. He ran the plates and learned that they were for a GMC Yukon (rather than a Malibu). Noblet approached the car and smelled marijuana coming from inside.

Noblet asked the driver, Eddie Lee Pope, to exit the car, and conducted a pat down for weapons. Pope said he had a colostomy bag attached to his groin because of a recent medical

procedure. When Noblet reached that area, he felt a bag that contained a hard, gravel-like substance—not what he would have expected in a colostomy bag. Noblet put Pope in the back of his cruiser and called for backup. After other troopers arrived, Noblet removed Pope from his cruiser to conduct a field sobriety test. Pope ran, but the troopers quickly caught up, arrested him, and patted him down a second time. But by then the bag in his groin area was gone. The troopers soon found a bag—containing a white substance of similar texture to what Noblet had felt earlier—along the path Pope had run. They concluded the bag likely contained methamphetamine. The troopers thus detained Pope and searched his car, where they found marijuana cigarettes, a scale, and various paper records of drug trafficking.

A federal grand jury thereafter indicted Pope for possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841. At Pope's first court appearance, he told the judge that he wanted to represent himself. The judge warned him against that decision, but Pope insisted. Pope later filed a motion to suppress the methamphetamine, which the court denied. Motions practice continued for two more years before Pope moved to dismiss his case, alleging a violation of the Speedy Trial Act. The district court granted that motion and dismissed Pope's indictment without prejudice. A grand jury then reindicted Pope, who continued to represent himself—including by filing a new motion to suppress, which the district court again denied. At trial, Pope asked the court to instruct the jury on simple possession as a lesser-included offense. The court denied his motion, and the jury convicted him of possessing methamphetamine with intent to distribute. This appeal followed.

II.

A.

Pope argues that the district court's dismissal of his case, under the Speedy Trial Act, should have been with prejudice rather than without. We review that decision for an abuse of discretion. *See United States v. Moss*, 217 F.3d 426, 430-31 (6th Cir. 2000).

The Act requires that a criminal trial begin within 70 days of a defendant's indictment. *See* 18 U.S.C. § 3161(c)(1). Subject to certain exceptions, if 70 days pass and a trial has not yet started, the court must dismiss the indictment. *Id.* §§ 3161(h); 3162(a)(2). Here, the district court found that 95 days had passed before trial.

Whether to dismiss an indictment with prejudice is left to the court's discretion. But the court must consider "among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.* § 3162(a)(2). Here, to that end, the court explained that "[t]he charged offense is a serious one, the passage of the non-excludable days is not chargeable to the government, and Pope does not show he has suffered actual prejudice as a result of the delay." The court thus dismissed Pope's indictment without prejudice.

Now represented by counsel, Pope contends that the dismissal should have been with prejudice for two reasons. First, he says his drug offense was "run of mill" rather than "serious." Our case law says the contrary: we have "categorically labeled drug offenses as serious." *Moss*, 217 F.3d at 431. Second, Pope says the district court should not have considered whether the delay prejudiced him because the Speedy Trial Act does not expressly mention prejudice as a relevant factor. But whether a defendant is prejudiced bears directly on how reprosecution affects the

"administration of justice," which the district court must consider. *United States v. Robinson*, 389 F.3d 582, 589 (6th Cir. 2004). And here the district court reasoned that the delay in Pope's trial would not hinder his defense, so dismissal without prejudice was appropriate. *See United States v. Taylor*, 487 U.S. 326, 339 (1988). That decision was not an abuse of discretion.

## B.

Pope argues that he waived his Sixth Amendment right to counsel unknowingly. We review the validity of his waiver de novo. *United States v. Johnson*, 24 F.4th 590, 601 (6th Cir. 2022). To ensure that a defendant's waiver was knowing, a district court "must ask the defendant a series of questions drawn from, or substantially similar to the model inquiry set forth" in the *Bench Book for United States District Judges*. *United States v. Heard*, 762 F.3d 538, 543 (6th Cir. 2014). That means a judge should address the defendant's familiarity with the law, the nature of the charges against him, and the dangers of self-representation, and then should admonish the defendant that he should not try to represent himself. *See United States v. Bankston*, 820 F.3d 215, 224 (6th Cir. 2016).

Here, the district court addressed all these points on at least three occasions. At Pope's preliminary hearing, the court discussed the seriousness of the charges (and potential penalties) that Pope faced, the difficulties of representing himself in federal court, and the representation that a public defender was prepared to provide to him. The court also told Pope that it had "never seen an individual who was better off not having an attorney than having an attorney" and that representing himself would be a "bad move." The court repeated similar warnings at Pope's arraignment and again at a pretrial conference. Each time, Pope acknowledged the risks and clearly stated that he wanted to represent himself anyway. The record makes plain that his waiver was knowing. *See Heard*, 762 F.3d at 543.

C.

Pope argues that Noblet stopped his vehicle without probable cause under the Fourth Amendment. An officer may stop a vehicle when its driver commits a traffic violation—no matter how minor—in the officer's presence. *Whren v. United States*, 517 U.S. 806, 810 (1996). The parties agree that a driver violates Ohio law when his car crosses over a lane's edge. *See* Ohio Rev. Code § 4511.33. Pope disputes only the district court's factual finding that his vehicle indeed crossed the lane's edge, which we review for clear error. *See United States v. Gilbert*, 952 F.3d 759, 762 (6th Cir. 2020). Here, the district court had ample evidence—including both Noblet's testimony and his dash-camera footage—to conclude that Pope's car had left its lane. Noblet had probable cause for the stop.

D.

Pope argues that insufficient evidence supported his conviction. We ask if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Here, the only element at issue is whether Pope possessed the methamphetamine. As described above, the jury heard testimony that officers had found the methamphetamine along the path of Pope's flight minutes after Noblet felt a bag containing a crushed, gravel-like substance in Pope's groin area. That was evidence enough for a rational jury to find that Pope had possessed the bag. *See United States v. Burris*, 999 F.3d 973, 975 (6th Cir. 2021).

E.

Finally, Pope argues that the district court should have instructed the jury that it could have convicted him of the lesser offense of simple possession, 21 U.S.C. § 844, rather than possession

with intent to distribute. But the evidence at trial showed that Pope possessed some 446 grams of methamphetamine—more than 2,000 doses for a typical user—along with a digital scale coated with white residue. Moreover, Pope himself testified that he used no drugs other than marijuana. All the evidence at trial, therefore, showed that Pope possessed the drugs for distribution, not for his own use. Pope thus had no "countervailing evidence" that would allow a jury to find that he lacked intent to distribute. *United States v. Jordan*, 100 F.4th 714, 725 (6th Cir. 2024). The district court properly denied this instruction.

*     *     *

The district court's judgment is affirmed.