# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 5, 2019      Decided December 10, 2019

No. 16-3121

UNITED STATES OF AMERICA,
APPELLEE

v.

JUAN PETIS MCLENDON,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:99-cr-00011-1)

———

*Howard B. Katzoff*, appointed by the court, argued the cause and filed the briefs for appellant.

*Daniel Honold*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *James Sweeney*, Assistant U.S. Attorneys.

Before: HENDERSON and KATSAS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Appellant, Juan McLendon, moved the district court to vacate his conviction, alleging violations of his Sixth Amendment right to effective assistance of counsel. He argued that his trial and appellate counsel failed to properly argue or advance a claim that his Speedy Trial Act ("STA") rights were violated. The district court denied McLendon's motion. It held that he could not show *Strickland* prejudice resulting from counsels' alleged failures because, even if there was a violation of the STA, the trial court would have dismissed the case without prejudice, allowing the government to reindict and reprosecute McLendon on the same charges.

For the reasons stated below, we affirm the district court's denial of the motion.

## I.  BACKGROUND

### A.  Speedy Trial Act

The STA was designed to give effect to a criminal defendant's right to a speedy trial under the Sixth Amendment. *United States v. Rojas-Contreras*, 474 U.S. 231, 238 (1985) (Blackmun, J., concurring) (citing H.R. REP. NO. 96-390, at 3 (1979)). Under the Act, "if a defendant is not brought to trial within seventy days of indictment, the court 'shall' dismiss the indictment 'on motion of the defendant.'" *United States v. Miller*, 799 F.3d 1097, 1104 (D.C. Cir. 2015) (quoting 18 U.S.C. § 3162(a)(2)). The Act specifies certain periods of pretrial delay that are excluded from computation of the seventy days. 18 U.S.C. § 3161(h). If the Act is violated, the court must dismiss the case but has discretion to dismiss with

or without prejudice. *Id.* § 3162(a)(2). The statute lists three nonexclusive factors to guide the court's exercise of that discretion: (1) the seriousness of the crime, (2) the facts and circumstances leading to the dismissal, and (3) the impact of reprosecution on the administration of the Act and on the administration of justice. *Id.* If the court dismisses without prejudice, the government is free to seek a new indictment against the defendant on the same or related charges. *See Miller*, 799 F.3d at 1104.

## B. Procedural History

The prosecution in the instant case began over twenty years ago. On September 15, 1998, the federal government filed an indictment against McLendon in Case No. 98-320. The indictment charged McLendon with two counts of unlawful use of a communication facility in violation of 21 U.S.C. § 843(b), two counts of unlawful distribution of fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), and two counts of unlawful distribution of cocaine base within 1,000 feet of a school in violation of 21 U.S.C. § 860(a).

McLendon was arrested on September 17, 1998, when he sold approximately sixty-two grams of cocaine base to an undercover police officer. One week after the arrest, the government filed a superseding indictment in the same case, which included an additional count for each of the charges in the original indictment, as well as charges for carrying a firearm during a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1); carrying a pistol without a license in violation of 22 U.S.C. § 3204(a); and assaulting, resisting, or interfering with a police officer in violation of 22 U.S.C. § 505(a). On October 2, 1998, McLendon was arraigned on the superseding indictment, and the trial court set a trial date for

January 6, 1999, but it rescheduled the trial for January 13, 1999. In early January 1999, however, the trial court raised concerns that the STA was violated and scheduled a status hearing.

A review of the record reveals that the parties, and the court, experienced scheduling difficulties throughout the pendency of the trial. Between his arrest in late September 1998 and November 23, 1998, McLendon changed attorneys three times. One of McLendon's earlier attorneys requested an extension to file pretrial motions, which was granted. Defense counsel, however, never filed any pretrial motions, never informed the court or the government that he did not intend to do so, and never attempted to cancel the motions hearing. In fact, it was this scheduled, but unnecessary, motions hearing that sparked the trial court's concerns about the STA.

At the STA status hearing on January 8, 1999, the trial court noted that, in part because McLendon had changed attorneys on three separate occasions, it would have been impossible to try the case within the STA period. Defense counsel himself repeatedly reinforced this conclusion by accepting much of the blame for the delay due to his busy court schedule and stating that he was not prepared to go to trial on the scheduled date. The court also accepted some blame for the delay and noted that "the case [had] slipped through the cracks." Appendix 77.

On January 7, 1999, one day before the status hearing, the government filed a new indictment in Case No. 99-11, which was identical to the indictment in Case No. 98-320. The government explained that it procured the indictment in Case No. 99-11 because it did not want the defendant released from custody if the court found an STA violation. The government maintained that it had "detrimentally relied on the fact that the

defense was going to file motions" and repeatedly noted that it was and had been prepared to proceed to trial on the scheduled date. Appendix 68.

The trial court estimated that the speedy trial clock had run several weeks earlier, around December 14, 1998. Accordingly, the trial court concluded that the Act had been violated and the indictment in Case No. 98-320 should be dismissed, noting that it was inclined to dismiss the case without prejudice. Additionally, the trial court stated that it intended to proceed to trial on the identical indictment in Case No. 99-11, but the court did not address whether the speedy trial clock in Case No. 98-320 also applied to Case No. 99-11. The court allowed both parties time to research and file written motions on the issues, including whether to dismiss the indictment in Case No. 98-320 with or without prejudice.

Despite the court's conclusions on the STA violations, defense counsel filed a motion to dismiss that allegedly miscalculated the excludable delay and ultimately conceded that the Act had not been violated. Counsel instead moved to dismiss either of the pending indictments with prejudice on double jeopardy grounds. The defense motion did not reference the § 3162(a)(2) factors and cited no other authority to support a dismissal with prejudice. Nor did defense counsel explore whether the same speedy trial clock applied to both Case No. 98-320 and Case No. 99-11.

In its own motion to dismiss Case No. 98-320 without prejudice, the government discussed each of the § 3162(a)(2) factors but did not consider whether the same speedy trial clock applied to both indictments. Based on the arguments before it, the trial court denied the defense motion, granted the government's motion to dismiss Case No. 98-320 without

prejudice, and allowed the government to prosecute McLendon in Case No. 99-11.

McLendon was tried three times. The first trial resulted in a mistrial on the first eight counts, a dismissal of the ninth count, and an acquittal on counts ten through twelve. The government then filed a new fifteen-count superseding indictment against McLendon on March 17, 1999. A second jury trial was held on that indictment and resulted in another mistrial, this time on all counts. A third jury trial was held beginning on January 4, 2000. Finally, McLendon was found guilty on all counts, except for one count on which he was found guilty of a lesser-included offense. On February 22, 2002, McLendon was sentenced to 235 months in prison followed by ten years of supervised release.

McLendon directly appealed his conviction, and this Court affirmed. *United States v. McLendon*, 378 F.3d 1109 (D.C. Cir. 2004). He then filed a motion to vacate, set aside, or correct his sentence, arguing that both trial and appellate counsel were constitutionally ineffective. McLendon argued that the identical indictment in Case No. 99-11 was a superseding indictment. The speedy trial clock for the indictment in Case No. 98-320 thus applied to the indictment in Case No. 99-11. Accordingly, he asserted, Case No. 99-11 should have been dismissed along with Case No. 98-320, and the prosecution in Case No. 99-11 violated his speedy trial rights under the Act. McLendon claimed that his trial counsel's flawed speedy trial advocacy was ineffective, and his appellate counsel's failure to argue that trial counsel was ineffective and failure to raise the standalone STA violation in the first place were also ineffective.

On November 29, 2016, the district court denied McLendon's motion because he had failed to show that the

alleged failures of his trial and appellate counsel had prejudiced his defense. McLendon filed a notice of appeal, and the district court granted a certificate of appealability. The current appeal ensued.

## II. STANDARD OF REVIEW

"As the court resolved in *United States v. Abney*, 812 F.3d 1079, 1086–87 (D.C. Cir. 2016), our review of the denial of a § 2255 motion on the ground of ineffective assistance of counsel is *de novo*." *United States v. Aguiar*, 894 F.3d 351, 355 (D.C. Cir. 2018). The familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), governs Sixth Amendment ineffective assistance of counsel claims. The same standard applies to claims of ineffective assistance of trial and appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). In order to prevail, the defendant must show that counsel rendered deficient performance that prejudiced his defense. *Strickland*, 466 U.S. at 687. The court does not have to consider deficient performance and prejudice in order. *Id.* at 697. If the defendant has failed to make a showing under either requirement, the court need not analyze the other. *Id.*

## III. DISCUSSION

We first address McLendon's argument that failure to obtain a dismissal without prejudice under these circumstances constitutes *Strickland* prejudice, and we hold that it does not. We then turn to his second claim that the district court erred in finding that the trial court would have dismissed Case No. 99-11 without prejudice in the first instance. Because that finding was made in the context of an ineffective assistance of counsel claim, however, we review the issue *de novo* and affirm the district court's decision.

In reaching these conclusions, we assume without deciding that the STA was violated, and that trial and appellate counsel were deficient in failing to properly argue or advance that violation. Because we affirm the district court's decision that successfully arguing the STA violation for Case No. 99-11 would have resulted in a dismissal without prejudice, as discussed *infra*, all of McLendon's ineffective assistance of counsel claims hinge on whether the failure to obtain a dismissal without prejudice constitutes *Strickland* prejudice. We thus address each of his distinct ineffective assistance of counsel claims together.

## A. *Strickland* Prejudice

Counsel's errors prejudice the defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. McLendon contends that counsels' failures to obtain a dismissal without prejudice under the STA in Case No. 99-11 constitutes *Strickland* prejudice because it would have resulted in the dismissal of the indictment on which he was convicted. He argues that, if that indictment were properly dismissed pretrial, it is possible that a grand jury would have refused to return a new indictment or, perhaps, would have returned an indictment containing lesser charges. Alternatively, if the STA violation were argued successfully on appeal, he argues that the government might have been willing to accept a plea agreement for a lesser sentence, or maybe a new jury would have acquitted him of some or all of the charges. Thus, he asserts, there is a reasonable probability that, but for counsels' deficient performance, the outcome of the proceeding would have been different.

McLendon correctly notes that this Court has not yet decided whether counsel's failure to obtain a dismissal without

prejudice constitutes *Strickland* prejudice. *See Miller*, 799 F.3d at 1105; *United States v. Marshall*, 669 F.3d 288, 295 (D.C. Cir. 2011). But several other circuits have held that it does not. *See, e.g.*, *Sylvester v. United States*, 868 F.3d 503, 511–12 (6th Cir. 2017); *United States v. Rushin*, 642 F.3d 1299, 1309–10 (10th Cir. 2011); *Chambliss v. United States*, 384 F. App'x 897, 899 (11th Cir. 2010) (unpublished); *United States v. Thomas*, 305 F. App'x 960, 964 (4th Cir. 2009) (unpublished); *United States v. Fowers*, 131 F. App'x 5, 6–7 (3d Cir. 2005) (unpublished). We find both the decisions of our sister circuits and *Strickland* itself instructive.

In *Rushin*, for example, where the defendant could not show that the government could not or would not have reindicted and reprosecuted the defendant after a dismissal without prejudice, the Tenth Circuit held that the defendant had not demonstrated *Strickland* prejudice resulting from counsel's failure to raise a violation of the STA. *Rushin*, 642 F.3d at 1309–10; *see also Sylvester*, 868 F.3d at 511–13. The *Rushin* court explained that, if the court dismissed the indictment without prejudice, the government likely would have reindicted the defendant, "placing him in the same posture as before the dismissal." *Rushin*, 642 F.3d at 1310. Although that might have meant the ultimate result of the criminal prosecution *could* have been different, the defendant "in no sense ha[d] *proven* the substantial likelihood of a result different from that he now face[d]." *Id.*

Moreover, in *Strickland*, the Supreme Court stated, "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland*, 466 U.S. at 691–92. The test for *Strickland* prejudice is whether the defendant can show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. The Supreme Court explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* And "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

We hold that, under the circumstances of this case, failure to obtain a dismissal without prejudice under the STA does not constitute *Strickland* prejudice. We acknowledge that a dismissal without prejudice forces the government to reindict the defendant in order to secure a conviction. We acknowledge that the government may not be willing to do so in every case, and circumstances outside of the government's control may preclude it from doing so. McLendon's argument does not meet that standard. He fails to recognize that it would be the exceedingly rare case in which a defendant could show a *reasonable* probability that, absent counsel's failure to obtain a dismissal without prejudice, the outcome of the criminal prosecution would be different.

Even if some case exists in which a defendant could show such a reasonable probability, this is not such a case. The government zealously prosecuted McLendon through three trials and obtained new indictments when necessary. The only reasonable probability, therefore, is that a pretrial dismissal without prejudice would not have produced a different result. Moreover, even if the STA violation were successfully argued on appeal, there is no factual basis to believe that the government would have refused to reindict or would have offered a plea agreement instead. And although McLendon points to the two mistrials as evidence that a different jury might not have convicted, we cannot say that our confidence as to the convicting jury's verdict is undermined. We

acknowledge that the government *might* have refused to reindict, a grand jury *might* have returned a different indictment, the government *might* have offered a plea agreement, or a new jury *might* have been unable to reach a verdict. Crucially, however, such hypotheticals are insufficient to undermine our confidence in the outcome of the proceedings or to give rise to any reasonable doubt respecting the defendant's guilt. Accordingly, the defendant has failed to show *Strickland* prejudice.

## B. Dismissal Without Prejudice

In the alternative, the defendant contends that the district court abused its discretion in analyzing the § 3162(a)(2) factors and deciding that a dismissal in Case No. 99-11 would have been without prejudice. However, as stated *supra*, because the district court analyzed the statutory factors in the context of an ineffective assistance of counsel claim, we review its decision *de novo*. Accordingly, we do not address whether the district court abused its discretion, and we affirm the decision under the stricter standard of *de novo* review.

As noted previously, the statute lists three factors to guide the court in determining whether the dismissal should be with or without prejudice: the seriousness of the crime, the facts and circumstances leading to the dismissal, and the impact of reprosecution on the administration of the Act and on the administration of justice. 18 U.S.C. § 3162(a)(2). The court may also consider factors other than the three listed, including any prejudice to the defendant resulting from the speedy trial violation. *Id.*; *United States v. Taylor*, 487 U.S. 326, 334 (1988) ("Although the discussion in the House is inconclusive as to the weight to be given to the presence or absence of prejudice to the defendant, there is little doubt that Congress intended this factor to be relevant for a district court's

consideration."); *United States v. Bittle*, 699 F.2d 1201, 1208 (D.C. Cir. 1983) ("Prejudice to the defendant is one of the factors that the district court may consider.").

It is important to highlight that the district court's analysis of these factors would not have changed regardless of whether the claim had been successfully argued at trial or on direct appeal. Under either scenario, the district court considers whether the dismissal should be with or without prejudice, assuming the STA violation were properly argued pretrial. *See United States v. Miller*, No. 05-143, 2018 WL 6308786, at *10 (D.D.C. Dec. 3, 2018) (addressing on remand whether the district judge would have dismissed the case with or without prejudice had the STA violation been successfully raised pretrial).

In his brief, McLendon concedes that the offenses were serious. Thus, we only consider the facts and circumstances leading to the dismissal, the impact of reprosecution on the administration of the STA and on the administration of justice, and any resulting prejudice to McLendon.

## 1. *Facts and Circumstances*

In *Taylor*, the Supreme Court noted that "bad faith," a "pattern of neglect," or "something more than an isolated unwitting violation" on the government's part would support a dismissal with prejudice. *Taylor*, 487 U.S. at 339; *see also United States v. Wright*, 6 F.3d 811, 814 (D.C. Cir. 1993). The Supreme Court also stated that the defendant's "culpable conduct and, in particular, his responsibility for the failure to meet the timely trial schedule in the first instance are certainly relevant ... and weigh heavily in favor of permitting reprosecution." *Taylor*, 487 U.S. at 340.

In *Wright*, this Court explained that the sanction for the government's failure to comply with the Act is the requirement of dismissal itself. *Wright*, 6 F.3d at 814. Accordingly, the court does not consider the speedy trial failure itself in deciding whether to dismiss the case with or without prejudice. *Id.* ("The decision of whether to dismiss *with or without prejudice* already assumes the Government's failure."). Instead, "the inquiry becomes *why* the Government failed." *Id.* at 814–15 (emphasis in original) (finding that the facts and circumstances weighed against a dismissal with prejudice where "the Government failed for relatively unobjectionable reasons").

McLendon argues that the delay was not attributable to the defense, and he highlights that government bad faith or intentional misconduct is not "a prerequisite to ordering a dismissal with prejudice." Appellant Br. at 36 (citing *United States v. Bert*, 814 F.3d 70, 84 (2d Cir. 2016)). Additionally, he asserts that "sheer neglect" of the speedy trial clock "is sufficient to trigger a dismissal with prejudice." *Id.* at 36 (citing *Zedner v. United States*, 547 U.S. 489, 499 (2006)). Therefore, in McLendon's view, the court's and the government's "negligent administration of the speedy trial clock" warrants a dismissal with prejudice. *Id.* at 37. We disagree.

First, McLendon's reliance on *United States v. Bert* is inapposite. In that case, the Second Circuit did note, as McLendon argues, that, even in the absence of bad faith or misconduct on the government's behalf, a dismissal with prejudice might still be warranted if the STA was violated. *Bert*, 814 F.3d at 80, 85 (remanding to the district court with instructions to reconsider whether a dismissal with prejudice might be warranted, even though the government exhibited no bad faith or intentional misconduct). However, the *Bert* court

emphasized the importance of a very lengthy delay or a finding of a "truly neglectful attitude" to tip the facts and circumstances factor in favor of a dismissal with prejudice under those circumstances. *See id.* at 80 (quoting *Taylor*, 487 U.S. at 338).

Our holding in this case does not rely only on the absence of government bad faith or intentional misconduct. Nor do we ignore the court's limited role in allowing the violation to occur. However, we also note that the defendant bears a major share of responsibility for the delay, and that the length of the delay was not so serious as to tilt the scale in favor of a dismissal with prejudice, as discussed below.

Second, we disagree with McLendon's reading of *Zedner* to support his assertion that sheer neglect of the trial clock, without more, warrants a dismissal with prejudice. The portion of the opinion that McLendon cites explicitly recognizes that § 3162(a)(2) "is designed to promote compliance with the Act *without* needlessly subverting important criminal prosecutions." *Zedner*, 547 U.S. at 499 (emphasis added). *Zedner* is accordingly better understood as explaining that *both* a dismissal with prejudice and a dismissal without prejudice encourage compliance with the Act, while emphasizing that a dismissal with prejudice is a more "powerful incentive." *Id.* *Zedner* did not, however, undercut *Taylor*'s guidance that a dismissal without prejudice is an appropriate remedy where the facts do not "suggest[] something more than an isolated unwitting violation" on the government's part. *Taylor*, 487 U.S. at 339; *see also id.* at 342 ("Dismissal without prejudice is not a toothless sanction.").

In this case, the government repeatedly represented that it was and had been prepared to proceed to trial. *See United States v. Ferguson*, 565 F. Supp. 2d 32, 47 (D.D.C. 2008) (dismissing the case without prejudice in part because "the

Government repeatedly represented that it was ready to proceed to trial"). McLendon does not direct us to anything in the record that reflects a pattern of neglect or intentional misconduct on behalf of the government. Instead, McLendon relies on what he construes as "negligent administration of the speedy trial clock" to support his argument that the facts and circumstances leading to the dismissal support a dismissal with prejudice. Appellant Br. at 37. We read the record, however, to suggest that the government's failure to comply with the Act in this case was akin to an isolated unwitting violation, which supports a dismissal without prejudice.

By contrast, the record reveals that the defendant's conduct was a major cause of the delay. At the status hearing, defense counsel, the government, and the court all homed in on this. For example, defense counsel stated his belief that the delay was caused by defense counsel's busy court schedule; the government made clear that it had allowed the case to linger on the docket because it had "essentially . . . detrimentally relied on the fact that the defense was going to file motions"; and the court noted that "it would have been an impossibility" to try the case on time because McLendon "had so many attorneys." Appendix 62, 67–70, 77. Thus, focusing on the culpability of the conduct that led to the dismissal, we conclude that the second factor weighs in favor of a dismissal without prejudice.

Although the trial court acknowledged that the case "slipped through the cracks," Appendix 77, the length of the delay was relatively short. Accepting McLendon's calculations for the sake of argument, the speedy trial clock expired on either December 19, 1998, or December 25, 1998. Calculating the period between the speedy trial clock's expiration and the scheduled trial date, the length of the delay was around twenty-five or nineteen days in total. Adding that delay to the seventy days allowed under the STA, then a total

of ninety-five or eighty-nine nonexcludable days passed before the scheduled trial date.

In other cases, courts have found much longer periods of delay to support a dismissal without prejudice. *See United States v. Robinson*, 389 F.3d 582, 588–90 (6th Cir. 2004) (holding that a dismissal without prejudice was appropriate where 101 nonexcludable days had passed); *United States v. Jones*, 213 F.3d 1253, 1258 (10th Cir. 2000) (holding that regardless of whether the delay was 216 or 414 nonexcludable days, a dismissal without prejudice was appropriate because the explicit statutory factors weighed against a dismissal with prejudice); *Miller*, 2018 WL 6308786, at *9–10 & n.4 (holding that a dismissal would have been without prejudice where the nonexcludable delay was around 171 days); *Ferguson*, 565 F. Supp. 2d at 45–49 (finding that 112 nonexcludable days warranted a dismissal without prejudice). The length of the delay in this case supports a dismissal without prejudice because it is not a serious enough violation to tip the second factor in favor of a dismissal with prejudice. *Cf. United States v. Stayton*, 791 F.2d 17, 22 (2d Cir. 1986) (holding that "the enormity" of a twenty-three-month delay was "sufficient alone to tip this second factor in favor of dismissal of the indictment with prejudice").

## 2. *Impact of Reprosecution*

We have previously noted that the third factor "cannot be viewed in isolation from the others." *Wright*, 6 F.3d at 816. Any adverse impact of reprosecution on the administration of the Act or the administration of justice depends in large part on the seriousness of the offense charged and the facts and circumstances leading to dismissal. *Id.* For example, if the government's misconduct caused the delay, a dismissal without prejudice is more likely to adversely affect the

administration of justice and the administration of the Act because it allows reprosecution despite government misconduct. *Id.*

Additionally, because it is the government's and the court's responsibility to ensure compliance with the Act, the dismissal requirement itself assumes the speedy trial failure. *See id.* at 814. Thus, failure to comply with the Act alone cannot support an adverse impact finding. To that end, the Supreme Court explained, "[d]ismissal without prejudice is not a toothless sanction," and lower courts should refrain from relying on "the greater deterrent effect of barring reprosecution" alone to support a dismissal with prejudice because that would render the § 3162(a)(2) factors "superfluous, and all violations would warrant barring reprosecution." *Taylor*, 487 U.S. at 342.

McLendon argues that allowing reprosecution in this case would have had an adverse impact on the administration of the Act and on the administration of justice. He argues that a dismissal without prejudice would have effectively sanctioned "the government's subterfuge" of the Act, because it would allow the government to obtain an identical indictment with the admitted goal of preventing McLendon's release from custody. Appellant Br. at 38. This is the only evidence that McLendon cites to support his argument that reprosecution would adversely impact the administration of the Act or the administration of justice. Although some courts consider the absence or presence of prejudice to the defendant along with this factor, we discuss it as a standalone factor in a separate section below.

We reiterate that both the seriousness of the offense and the facts and circumstances leading to the dismissal weigh in favor of a dismissal without prejudice. Because we are

ultimately unpersuaded by McLendon's characterization of the government's indictment in Case No. 99-11 as a "subterfuge," we hold that the third factor weighs against a dismissal with prejudice.

As noted above, the record illustrates the scheduling difficulties among the parties, including the court, leading up to trial. In response to the court's STA concerns, and in its haste to ensure that the defendant was not released from custody, the government convened a grand jury and reindicted McLendon before the status hearing. Under the particular circumstances of this case, we do not construe the government's action as a "subterfuge" of the Act.

We hold that, under these circumstances, allowing reprosecution would not adversely impact the administration of the Act or the administration of justice. Accordingly, the third factor weighs against a dismissal with prejudice.

### 3. *Prejudice to Defendant*

The presence or absence of prejudice to the defendant is a relevant consideration under § 3162(a)(2). *Taylor*, 487 U.S. at 334; *Wright*, 6 F.3d at 816; *Bittle*, 669 F.2d at 1208. The Supreme Court noted that the length of the delay is related to any prejudice suffered by the defendant: "The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." *Taylor*, 487 U.S. at 340. In *Bert*, the Second Circuit noted that this includes two types of prejudice: trial prejudice and non-trial prejudice. *Bert*, 814 F.3d at 82. Trial prejudice is "prejudice in the defendant's ability to mount a defense at trial." *Id.* Non-trial prejudice includes prejudice in the defendant's liberty interest and his own personal, social,

and economic life. *Taylor*, 487 U.S. at 340; *Bert*, 814 F.3d at 82.

As to trial prejudice, McLendon alleged that the "prolonged period of incarceration" disadvantaged his defense. Appellant Br. at 38. But this raises nothing more than a hypothetical impairment of McLendon's ability to prepare for trial. *See, e.g.*, *United States v. Koerber*, 813 F.3d 1262, 1288 (10th Cir. 2016) (holding that defendant must show specific trial prejudice); *Robinson*, 389 F.3d at 589 (holding that the defendant "fail[ed] to allege any particularized prejudice to his defense, such as loss of evidence"). Accordingly, McLendon has failed to demonstrate trial prejudice.

As to non-trial prejudice, McLendon asserts that his liberty interest was impaired because he remained in jail after the speedy trial violation. However, as discussed above, courts have found even longer periods of delay to support a dismissal without prejudice despite any alleged prejudice to the defendant's liberty interest. *See Robinson*, 389 F.3d at 589 (holding that, even though 101 nonexcludable days had passed, the dismissal was appropriately without prejudice because the defendant did not "specifically state how this 31-day delay affected his life circumstances, if at all"); *Jones*, 213 F.3d at 1258 (holding that, although the passing of 216 or 414 nonexcludable days "is very serious," the seriousness of the offense, the government's lack of responsibility leading to the dismissal, and the defendant's inability to demonstrate trial prejudice suggested that a dismissal without prejudice was appropriate).

Similarly, we cannot seriously conclude that McLendon's liberty interest was impaired because he would have been released from custody pending reindictment or because the government might not have reindicted him. The facts in the

record are that the government was able to obtain a new indictment before the status hearing in a matter of less than one week, and again pursued a new indictment after the first mistrial. In all likelihood, the government would have quickly pursued reindictment after a dismissal without prejudice, and McLendon would have been at liberty for only a brief period. Accordingly, we hold that the relatively minor impairment to McLendon's liberty interest did not tip the scale in favor of a dismissal with prejudice under the circumstances.

Highlighting that each of the explicit statutory factors weighs in favor of a dismissal without prejudice, we hold that McLendon has not shown that he suffered any trial or non-trial prejudice sufficient to tip the scale in favor of a dismissal with prejudice.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of the motion for vacatur in full.