# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 18, 2019        Decided March 27, 2020

No. 18-3090

UNITED STATES OF AMERICA,
APPELLEE

v.

ROBERT FRANK MILLER, ALSO KNOWN AS ROBERT FRANKLIN
MILLER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cr-00143-1)

*Gregory S. Smith*, appointed by the court, argued the cause and filed the briefs for appellant.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *T. Anthony Quinn*, Assistant U.S. Attorneys.

Before: GARLAND and WILKINS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

Concurring Opinion filed by *Senior Circuit Judge* WILLIAMS.

WILKINS, *Circuit Judge*: This case comes to us for a second time. This time, we consider Robert Miller's claims that he received ineffective assistance of counsel (IAC) under *Strickland v. Washington*, 466 U.S. 668 (1984). In 2007, Miller was tried and convicted on seven counts of travel fraud and two counts of wire fraud, and was sentenced to 204 months in prison. Miller appealed and was appointed new counsel. On appeal, he challenged both his conviction and his sentence. We affirmed his direct-review claims, but we remanded for the district court to consider in the first instance his IAC claims. *United States v. Miller*, 799 F.3d 1097 (D.C. Cir. 2015) ("*Miller I*"). On remand, Miller asserted IAC claims based on alleged pretrial, trial, and sentencing errors. After an evidentiary hearing, the district court denied all of Miller's IAC claims. *United States v. Miller*, No. CR 05-143 (RJL), 2018 WL 6308786 (D.D.C. Dec. 3, 2018). Miller has appealed. We conclude that Miller has established ineffective assistance with respect to his claim that trial counsel should have informed the district court that Miller had lost one year of Maryland state jail credits while awaiting his federal trial, and we remand for resentencing. In all other respects, however, we affirm the judgment of the district court.

**I.**

**A**.

Beginning in July 2003, Miller operated a company called American Funding and Investment Corporation (AFIC), through which he purported to offer two types of services: (i) high-yield real estate investments, and (ii) home-buying

assistance for people with poor credit. *Miller I*, 799 F.3d at 1100. He lured investors by promising to "buy and refurbish foreclosure properties and then resell those properties, at a profit, to home buyers with poor credit." *Id.* Then, he persuaded prospective home buyers with poor credit to give him cash "down payments," promising to help them obtain mortgages for a home they had preselected. *Id.* Miller made hundreds of thousands of dollars from this scheme, but he never purchased any real estate or secured any mortgages. *Id.* Instead, he used the money to "pay rent for AFIC's office space, compensate employees, buy office equipment, obtain newspaper advertisements to attract additional investors, cover personal and travel expenses, and make partial distributions to certain investors who demanded repayment." *Id.*

On April 6, 2004, Miller learned from a lawsuit filed by an aggrieved investor that the Secret Service was investigating this Ponzi-type scheme. Two days later, on April 8, 2004, Miller directed several AFIC employees to place twenty-two boxes of files and records into a Ford Explorer that his secretary, Tonya Smith, had borrowed from her mother and parked in the building garage in one of the four parking spots that AFIC paid for. The Secret Service agent investigating the case, Anthony Saler, learned from an AFIC investor that Miller was moving files out of the office and that he'd told his employees not to come in the next day. Concerned that Miller was trying to flee or destroy evidence, Agent Saler and other law enforcement officers arrested him at his office on unrelated outstanding Maryland arrest warrants.

Agent Saler encountered Smith in a different part of the office building. He asked her where the files were, told her of Miller's arrest, and told her that if she didn't cooperate, she could be arrested. Smith then told Agent Saler that the boxes of files were in her mother's Ford Explorer. After further

questioning, Agent Saler told Smith that he needed the files that night. Believing that she would be arrested if she didn't comply, she agreed to drive the Ford Explorer, with the boxes inside, to the Secret Service's Washington field office, with Agent Saler in the car with her. The Secret Service held the boxes, but did not search them until April 27, 2004, when they obtained a search warrant. This warrant also authorized the search of AFIC's offices.

**B.**

On April 22, 2005, a federal grand jury indicted Miller on nine counts of travel fraud, 18 U.S.C. § 2314, and two counts of wire fraud, 18 U.S.C. § 1343. By this time, Miller had already begun serving an eight- to twelve-year sentence based on his April 2004 conviction in Maryland state court on four counts of felony theft. On December 16, 2005, he was transferred to temporary custody of the United States Marshalls Service on a federal writ.

Less than a year after the indictment was handed down, trial counsel moved to suppress the twenty-two boxes seized from Smith's car. Miller's trial counsel and the government agreed to bifurcate the suppression hearing by first litigating whether Miller had Fourth Amendment standing to challenge the search of the Ford Explorer and the seizure of the boxes. The Secret Service had not obtained a warrant for either action. Before the hearing, the parties submitted a stipulation that (1) Smith was Miller's employee, (2) Smith's mother was the owner of the Ford Explorer, (3) Smith had "temporary use of the vehicle," (4) the boxes contained AFIC files and Miller's personal records, and (5) Miller told Smith to put the boxes in the Ford Explorer. In addition, Miller's counsel submitted a parking payment of $840 establishing that AFIC paid for parking spots in the garage where the Ford Explorer was

parked. Trial counsel did not submit any additional evidence before or during the suppression hearing to support Miller's standing.

After the suppression hearing, but before the court ruled on the motion, Miller's trial counsel submitted a "Notice of Filing," asking the court to accept a memorandum from the United States Department of Housing and Urban Development (HUD), which had been investigating Miller's real estate scheme since 2000. This memorandum summarized a HUD agent's interview of Smith in January 2006. The government had produced the HUD memorandum to trial counsel before the suppression hearing, during pretrial discovery. According to the HUD memorandum, Smith told the HUD agent that she had lent the Ford Explorer to Miller—a fact that could help establish Miller's standing to challenge the search of the car. In a minute order, the district court denied Miller's request to consider the HUD memorandum despite the memorandum's having been submitted out of time.

Several months later, the district court denied the motion to suppress for lack of standing, without reaching the merits of the motion. Specifically, the court concluded that Miller had "fail[ed] to demonstrate an objectively legitimate expectation of privacy in the vehicle" and that he therefore lacked "standing to challenge the seizure of the boxes located in that vehicle." *Miller I*, 799 F.3d at 1101.

The case then proceeded to trial. The parties agree that, because more than seventy non-excludable days passed before he was brought to trial, a Speedy Trial Act (STA) violation occurred in this case.[1]  *See* 18 U.S.C. §§ 3161(c)(1),

---

[1] The district court didn't rule on the motion to suppress until December 12, 2006, at least 83 non-excludable STA days after the

3162(a)(2). Although trial counsel invoked Miller's STA rights at arraignment, he did not push for a speedy trial after that, so the court took no action. Nor did trial counsel ever move to dismiss the case on STA grounds.

The trial lasted nine days. Over a dozen witnesses testified against Miller, explaining that they had invested in his company, never been paid back, and struggled to get a response from him. Miller's trial counsel did not put on a defense case. The jury convicted Miller on all nine counts on November 20, 2007, and on December 10, 2008, the district court sentenced Miller to 204 months' imprisonment, to run consecutively to his eight- to twelve-year Maryland state sentence. He was returned to Maryland custody on January 7, 2009, but his detention on a federal writ caused him to lose over a year of "confinement credits" from Maryland. Trial counsel failed to bring this fact to the court's attention at sentencing.

Miller then appealed both his conviction and his sentence, and we appointed him new counsel. In 2015 we rejected all his direct-review claims, but, consistent with our general practice, we remanded for the district court to consider his IAC claims in the first instance. *Miller I*, 799 F.3d at 1103-04; *see United States v. Richardson*, 167 F.3d 621, 626 (D.C. Cir. 1999) (explaining that we normally do not resolve IAC claims on direct appeal unless the trial record conclusively answers the questions presented).

## C.

On remand, Miller asserted various IAC claims. First, he asserted IAC during the suppression stage, based on trial

---

indictment, so the disposition of the suppression motion occurred after the STA violation had taken hold.

counsel's failure to establish his standing to challenge the search of the Ford Explorer. Second, he asserted IAC based on counsel's failure to move for STA dismissal. Third, he asserted IAC during trial, based on counsel's failure to call as witnesses certain investors who Miller had paid back. Fourth, he asserted IAC claims during sentencing, based on counsel's failure to argue for a sentencing reduction in light of the year's worth of Maryland confinement credits he lost while awaiting his federal trial, as well as counsel's failure to request that the district court recommend him for a drug rehabilitation program.

The district court held an evidentiary hearing on the claims. Only two witnesses testified at the hearing: the defense called Miller himself, and the government called Miller's trial counsel. Nearly a year later, the district court issued an order and memorandum opinion denying Miller's IAC claims. *Miller*, 2018 WL 6308786, at *1. Miller has appealed. "[W]e review *de novo* a denial of an ineffective assistance of counsel claim." *United States v. Abney*, 812 F.3d 1079, 1087 (D.C. Cir. 2016).

**II.**

The Supreme Court first set forth the requirements for an IAC claim in *Strickland v. Washington*, 466 U.S. 668, 693 (1984). To prevail on such a claim, the defendant must show (1) deficient performance, that "his counsel's performance fell below an objective standard of reasonableness," and (2) prejudice, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Mohammed*, 863 F.3d 885, 889 (D.C. Cir. 2017) (internal quotation marks omitted). When deciding a *Strickland* claim, "there is no reason for a court . . . to approach the inquiry in the same order

or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "We review for clear error any findings of historical fact embedded in the District Court's conclusions on deficient performance and prejudice." *United States v. Gray-Burriss*, 920 F.3d 61, 65 (D.C. Cir. 2019) (internal quotation marks omitted).

**A.**

Miller first contends that the district court misapplied the standard for *Strickland* prejudice in its analysis. The Supreme Court has explained that the "reasonable probability" a claimant must prove is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This standard is less exacting than the preponderance standard. *See id*. ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").

Miller argues that our Court adopted a less exacting standard for showing prejudice in *United States v. Mohammed*, where we declared that "[i]n assessing prejudice, the ultimate question is whether [the defendant] has shown a reasonable probability that adequate investigation would have enabled trial counsel to sow sufficient doubt about [a witness's] credibility to sway even one juror." 863 F.3d at 892 (internal quotation marks omitted). Miller is incorrect, however, because this is merely a different articulation of the familiar *Strickland* prejudice test. To convict a defendant, a federal jury must unanimously concur in the verdict. Therefore, if an IAC claimant establishes "sufficient doubt" about the evidence strong enough to "sway even one juror," *see id*., then she has

necessarily "undermine[d] confidence in the outcome" under *Strickland*.

Miller also contends that the district court "erred in prospectively declaring that any IAC claims not raised by Miller will be deemed waived in any future 28 U.S.C. § 2255 action," because appellate counsel (who argued the IAC claims below) "could not fairly be expected to argue ineffectiveness against himself." Appellant's Opening Br. at 1, 34-35. This argument lacks merit, however, as the district court merely stated that "any IAC claims that are now ripe but not presently before the Court will be considered waived for purposes of any future § 2255 action." *Miller*, 2018 WL 6308786, at *5 n.1. Because any potential IAC claims based on appellate counsel's performance were not "ripe" at the time the district court issued its decision, the district court did not deem them waived.

**B.**

Miller next argues that trial counsel rendered ineffective assistance during the suppression stage. Specifically, he argues that trial counsel should have timely introduced the HUD memorandum to establish Miller's standing to challenge the search of the Ford Explorer. Here, we conclude that, even assuming deficient performance,[2] Miller has failed to establish *Strickland* prejudice, because the suppression motion would have failed on the merits.

"Where defense failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness,

---

[2] Because we conclude that Miller cannot establish prejudice, we need not decide whether trial counsel performed deficiently by failing to introduce the HUD memorandum, which would have established that Miller had permission from Smith to use the Ford Explorer. *See Strickland*, 466 U.S. at 697.

the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Here, the district court concluded that even if Miller had proved standing to challenge the search of the Ford Explorer and the seizure of the boxes inside, he would have failed at suppressing the boxes, because there was "probable cause to believe that [the boxes] contained evidence of Miller's suspected fraud in the form of AFIC files, which Miller was in the process of moving to evade law enforcement scrutiny." *Miller*, 2018 WL 6308786, at *8. We agree.

"Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) (internal quotation marks and alterations omitted). "Authorities may conduct a warrantless search of a motor vehicle if they have probable cause to believe it contains contraband or evidence of a crime." *United States v. Lawson*, 410 F.3d 735, 740 (D.C. Cir. 2005). And police do not need probable cause to search an entire vehicle in order to search a container inside the vehicle for which there is probable cause to search. *California v. Acevedo*, 500 U.S. 565, 573 (1991). Moreover, officers may, as they did here, "seize a container and hold it until they obtain a search warrant." *Id.* at 575.

In concluding that the suppression motion would have failed, the district court relied on an affidavit signed by Agent Saler in support of the application for a warrant to search the Ford Explorer. Miller complains that this affidavit is undated,

preventing us from determining whether Agent Saler knew those facts at the time he searched the car. However, we agree with the district court that "had the issue been litigated at the suppression stage, the Government likely would have established that by April 8 Agent Saler knew all—or at least the vast majority of—the facts set out in the affidavit." *Miller*, 2018 WL 6308786, at \*7. It is undisputed that Agent Saler had been investigating Miller for several weeks when he seized the boxes. And in the course of that investigation, he questioned many witnesses, including AFIC investors and former AFIC employees. In addition, Agent Saler had been in contact before the seizure with Maryland law enforcement officials and HUD, who were both investigating Miller for fraud. Finally, Agent Saler knew that Miller had told employees not to come to work and was packing up boxes of files and putting them in a vehicle. The sum of that information establishes probable cause, and because the Secret Service had probable cause for the search, trial counsel's failure to introduce the HUD memorandum did not cause Miller any prejudice under *Strickland*.

Miller also argues that the district court "failed to address [his] separate, independent trespass basis for suppression." Appellant's Opening Br. at 39. He argues that the trespass theory of the Fourth Amendment, "which requires a warrant (not just probable cause) to enter property, should have barred [Agent] Saler's physical intrusion onto Miller's parking space to even access this vehicle." *Id.* We agree with the government that Miller forfeited this argument, because he did not adequately present it in the IAC hearing below. *See* JA.833, 846; *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1285 (D.C. Cir. 2019) ("Because plaintiffs failed to raise this argument below, they have forfeited it.").

Finally, Miller argues, in a single conclusory sentence, that the automobile exception to the warrant requirement is not

applicable here because the car "was *moved* before any boxes were unloaded." Appellant's Opening Br. at 39. "Because this argument was raised in the opening brief only summarily, without explanation or reasoning," we deem it waived. *See City of Waukesha v. E.P.A.*, 320 F.3d 228, 251 n.22 (D.C. Cir. 2003).

## C.

Miller also asserts that his trial counsel rendered ineffective assistance by failing to move for dismissal based on the STA violation. It is undisputed that an STA violation occurred and that trial counsel failed to move for STA dismissal. However, even assuming that trial counsel's performance was deficient,[3] we conclude that Miller's STA-based claim fails because he cannot establish prejudice under *Strickland*.

The Speedy Trial Act "establishes a general rule: if a defendant is not brought to trial within seventy days of indictment, the court 'shall' dismiss the indictment 'on motion of the defendant.'" *Miller I*, 799 F.3d at 1104 (quoting 18 U.S.C. § 3162(a)(2)). "In the event of an STA violation, the district court retains discretion to determine 'whether to dismiss the case with or without prejudice' based on three statutory factors." *Id.* (quoting § 3162(a)(2)). "In the case of a dismissal without prejudice, the government has six months from the date of dismissal to secure the return of a new indictment." *Id.* (citing § 3288).

---

[3] Because we conclude that Miller cannot establish prejudice for his STA-based claim, we do not consider the parties' arguments about whether trial counsel was deficient in this regard.

13

In *United States v. Marshall*, 669 F.3d 288, 293-95 (D.C. Cir. 2011), we held that failing to move for STA dismissal in light of a clear-cut violation prejudiced the defendant. We left open, however, whether such a failure would constitute *Strickland* prejudice if the district court would have dismissed the indictment *without* prejudice, allowing the government to re-indict within six months. *Id.* at 295 ("Because the government raised this argument for the first time at oral argument, we decline to consider it."). Accordingly, in *Miller I*, we instructed the district court to first determine "whether, in the event of a successful STA objection, the case would have been dismissed with or without prejudice." 799 F.3d at 1104–05. Failing to move for what would have been a with-prejudice dismissal obviously demonstrates prejudice, but we instructed that "if the [district] court concludes that it would have dismissed without prejudice, thus leaving room for a retrial, the court will need to assess the implications of such a dismissal under *Strickland*'s prejudice standard." *Id.*

**1.**

Miller first argues, as he did in *Miller I*, that a without-prejudice dismissal, standing alone, constitutes *Strickland* prejudice. In *Miller I*, he argued that "a dismissal without prejudice would itself demonstrate *Strickland* prejudice," without the need for further factfinding. *Id.* at 1105. He renews this argument here, contending that even if the dismissal had been without prejudice, Miller would have at least preserved for appeal the issue of whether a without-prejudice dismissal was warranted. This is true. *See Marshall*, 669 F.3d at 295 (finding *Strickland* prejudice, in part, because "raising the [STA] issue would at least have preserved it for appeal, and thus [the defendant] would have secured dismissal of the indictment, later if not sooner").

The district court rejected this argument by incorrectly concluding that Miller could have raised the issue on direct appeal through plain error review. *See Miller*, 2018 WL 6308786, at \*12 n.8 ("Miller's suggestion of prejudice from the attendant failure to preserve the STA violation for appellate review . . . fails because meritorious STA claims are mechanical in nature and 'will always be plain to a reviewing court and will always affect substantial rights.'") (quoting *United States v. Taplet*, 776 F.3d 875, 880–81 (D.C. Cir. 2015)). But the only way to appeal a failure by trial counsel to move for STA dismissal is through an IAC claim. That is so, because failing "to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal." 18 U.S.C. § 3162(a)(2). And we have held that due to the potential for gamesmanship by the defense, plain-error review is unavailable for claims based on failing to move for STA dismissal. *Taplet,* 776 F.3d at 879–81 (explaining that defendants would "have an incentive to withhold meritorious non-excludable time in their motions to dismiss on the chance that if their trials go badly, plain error review of an STA claim will act as a one-time reset button"). Indeed, we recognized in *Miller I* that, because "Miller never sought a dismissal on STA grounds before the district court," any "STA challenge he might bring on [direct] appeal … is waived." 799 F.3d at 1104 (citing *Taplet*, 776 F.3d at 879–81).

However, the fact that Miller would have preserved for appeal the issue of whether a dismissal should have been with prejudice is not, by itself, sufficient to establish *Strickland* prejudice. After all, such an appeal would have been subject to abuse-of-discretion review. *See id.* ("In the event of an STA violation, the district court retains discretion to determine 'whether to dismiss the case with or without prejudice' based on three statutory factors."). And Miller presents no reason to believe that, had counsel moved for STA dismissal, the district

court would have abused its discretion in dismissing without prejudice.[4]  Indeed, given that Miller's crimes were very serious and that the trial delay was not attributable to the government, we conclude that the district court would have been well within its discretion to dismiss without prejudice. *See* 18 U.S.C. § 3162 (requiring the district court to consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice").

**2.**

Next, Miller argues that, under the circumstances of this case, failing to obtain a without-prejudice dismissal caused him prejudice under *Strickland*.

Where, as here, a dismissal would have likely been without prejudice, the defendant must establish a reasonable probability that either he wouldn't have been re-indicted or that he would have obtained a more favorable outcome on re-indictment. *United States v. McLendon*, 944 F.3d 255, 262 (D.C. Cir. 2019).  However, a defendant cannot rest on a parade of hypotheticals to establish *Strickland* prejudice.  *See id.* ("We acknowledge that the government *might* have refused to

---

[4] In a footnote, Miller asserts that it would be "premature" to present arguments "for why a STA dismissal should have been granted with prejudice in this case" and instead attempts to incorporate by reference arguments he made to that effect in the district court. Appellant's Opening Br. at 43 n.18.  We do not consider such arguments. *Davis v. Pension Ben. Guar. Corp.*, 734 F.3d 1161, 1167 (D.C. Cir. 2013) (parties may not "incorporat[e] argument[s] presented in the district court, . . . as this would circumvent the court's rules, . . . regarding the length of briefs") (citing D.C. CIR. R. 32(a)).

reindict, a grand jury *might* have returned a different indictment, the government *might* have offered a plea agreement, or a new jury *might* have been unable to reach a verdict[.] . . . [S]uch hypotheticals are insufficient to undermine our confidence in the outcome of the proceedings[.]"). Rather, the defendant needs concrete evidence to establish a reasonable probability that "the outcome of the criminal prosecution would be different." *Id.* Such a showing is difficult, but can be made in myriad ways, including through evidence that: the government would not have re-indicted or would have offered a more favorable plea agreement, *see id.*; the statute of limitations would have run on one or more of the charges, *see United States v. Taylor,* 487 U.S. 326, 342 (1988); *United States v. Rushin*, 642 F.3d 1299, 1312–13 (10th Cir. 2011) (Holmes, J., concurring); or a key witness has become unavailable, *see Campbell v. United States*, 364 F.3d 727, 731 (6th Cir. 2004).

Miller does not allege (nor does the record support) any such circumstances. Rather, he points to two unique circumstances that he argues establish *Strickland* prejudice in this case.

First, Miller argues that, upon re-indictment, trial counsel would have "corrected his mistakes by presenting timely evidence of Miller's standing" to suppress the boxes in the Ford Explorer. Appellant's Opening Br. at 43-44. True as this may be, we have already concluded that Miller's suppression motion would have failed on the merits. Thus, the fact that he would have obtained a new suppression hearing upon reindictment is insufficient to show a reasonable probability that the outcome of his re-prosecution would have been different. *See McLendon*, 944 F.3d at 262.

Second, Miller argues that the failure to move for STA dismissal increased his time in federal prison.  Specifically, he notes that he was transferred from Maryland state custody to federal authorities on a federal writ and that "[d]uring the 896 days of delay between this indictment and trial, [he] lost over a year of good time credits he otherwise would have earned in Maryland custody."  Appellant's Opening Br. at 44.  He further notes that the district court concluded that a dismissal without prejudice would have "prodded the Government and the Court to move quickly to trial."  *Id.* (citing *Miller*, 2018 WL 6308786, at \*12).  Accordingly, he argues that, if his counsel had moved for STA dismissal, his trial upon reindictment would have "taken place quickly, and [he] could have been returned to Maryland state custody where he could earn additional good time credits, and as a result, he would now be getting out of federal prison sooner, since his federal consecutive sentence did not begin until his Maryland state custody ended."  *Id.* at 45 (emphasis omitted).

We conclude that this argument is too speculative to establish *Strickland* prejudice.  Indeed, even if trial counsel had moved for dismissal as soon as the violation occurred, and even if the government had moved as quickly as possible to re-indict him, there is little reason to believe that Miller would have spent less time in federal custody than he did in fact.  If anything, he would have likely spent *more* time in federal custody, as the government would have been forced to re-do much of the pretrial proceedings to that point, including re-litigating the suppression motion. *See McLendon*, 944 F.3d at 262.

**D.**

Miller next argues that trial counsel provided ineffective assistance by failing to call as trial witnesses investors who'd

been paid back.[5]  We disagree.  As trial counsel explained at the evidentiary hearing, allowing these witnesses to testify would have helped prove the government's case: "the investors who got paid back got paid back for a reason, because they hounded Mr. Miller and threatened to call law enforcement." JA.815.  Because there was a sound, strategic reason not to call these witnesses, we conclude Miller has failed to overcome the "strong presumption" that trial counsel's performance was within an "objective standard of reasonableness." *See Strickland*, 466 U.S. at 688-89

**E.**

Finally, Miller asserts ineffective assistance based on trial counsel's performance at sentencing.  He alleges two specific deficiencies.

First, Miller argues that trial counsel should have requested that the court recommend to the Bureau of Prisons (BOP) that he be placed in the "Residential Drug Abuse Program" (RDAP).  There is no dispute that Miller was eligible for RDAP.  But Miller concedes that BOP retains absolute discretion over whether to place a defendant in RDAP.  Thus, a district court's recommendation is not dispositive.  Indeed, trial counsel testified that, while he "definitely" should have made the request, a recommendation from the court merely

---

[5] The district court concluded that Miller had "abandon[ed]" his trial-based claim, because the "proposed conclusions of law" section of Miller's brief failed to address it. *Miller*, 2018 WL 6308786, at \*14. However, Miller raised this issue in his post-remand motion identifying his IAC claims, briefed it at length in the proposed "findings of fact" section of his brief, and argued it during the post-hearing oral argument.  We therefore reject the government's contention that this claim is not properly before us. *See* Govt's Resp. Br. at 63 n.5.

"helps" place a defendant in the program. JA.353. As a result, even assuming that trial counsel's failure to ask the district court for an RDAP recommendation fell below an objective standard of reasonable performance, Miller has failed to show a reasonable probability that he would have actually been placed in RDAP had he received a recommendation from the district court.

Second, Miller argues that trial counsel should have notified the court that his being detained on a federal writ prevented him from earning over a year of confinement credits towards his Maryland state sentence. Failing to do so, Miller argues, caused the district court to believe that his Maryland sentence was one year shorter than it actually was. On this point, we agree with Miller.

At sentencing, trial counsel explained that, because Miller had already served four years of his Maryland state sentence, only four to eight years of that sentence remained. (Recall that Miller had received an eight- to twelve-year Maryland sentence.) However, trial counsel neglected to inform the court that Miller's detention on a federal writ while awaiting trial deprived him of the opportunity to earn approximately one year of Maryland confinement credits. His pretrial custody occurred in a federal facility, so he could not earn certain Maryland credits—such as for participating in a work detail— against the Maryland sentence during that time. *See, e.g.*, Md. Code Ann., Corr. Servs. § 3-705 (providing for work credits). The government does not dispute that this error fell below an objective standard of reasonable performance.

On remand, the district court concluded that this error did not prejudice Miller, because "even if Miller's counsel had notified [the court] during sentencing of this Maryland jail credit issue, it wouldn't have made a difference to the sentence

[the court] gave him, which was crafted to be a fair sentence for Miller's federal case." *Miller*, 2018 WL 6308786, at \*14 (quotations and alterations omitted). Whether Maryland affords Miller credit for his time in federal custody, the district court explained, "is up to Maryland." *Id.* Not so.

The district court would not have been permitted to disregard the fact that Miller's detention on a federal writ caused him to lose one year of Maryland state jail credits. Had it done so, its conclusion would have been procedurally unreasonable. *See* 18 U.S.C. § 3553(a); *United States v. Flores*, 912 F.3d 613, 618 (D.C. Cir. 2019). As we explained in *Miller I*, the Sentencing Guidelines in effect at the time of Miller's sentencing provided that a "sentence . . . may be imposed to run concurrently, partially concurrently, or consecutively to the prior [sentence] to achieve a reasonable punishment for the instant offense." 799 F.3d at 1107 (citing U.S.S.G. § 5G1.3(c) (2008)). Thus, in order to determine whether a consecutive sentence is "reasonable," a sentencing court must know what the other sentence is and consider whether the federal sentence, when combined with the state sentence, is necessary to achieve a reasonable punishment. U.S.S.G. § 5G1.3(c) (2008). To be sure, the district court knew that Miller faced an "indeterminate" sentence in Maryland. *See Miller I*, 799 F.3d at 1107. But to craft a reasonable sentence, it would have needed to consider that there was an extra year at the bottom of that indeterminate range.[6]

---

[6] We take no position on the 18 U.S.C. § 3585(b) issues Judge Williams raises in his concurrence, because these issues were not raised below or briefed on appeal.

21

**III.**

Consistent with this opinion, we reverse the judgment of the district court insofar as it rejected Miller's sentencing-based IAC claim, and we remand for resentencing. In other all respects, we affirm.

WILLIAMS, *Senior Circuit Judge*, concurring:

I join the court's opinion in full. I write only to express my thoughts regarding the complexities of Miller's original sentencing and my understanding of how these complexities will impact his resentencing.

By the time the federal government prosecuted Miller, he had already been convicted of a state offense in Maryland and was serving time in the state's penitentiary. To further federal prosecution, Maryland authorities transferred Miller to federal custody in the District of Columbia in response to a writ of habeas corpus ad prosequendum.

Being held in federal custody had the direct effect of extending Miller's total time in incarceration by about a year (precision will require fact-finding in the district court). The Maryland legislature has adopted a generous prison credits scheme, wherein inmates receive credits against their sentence for various forms of good behavior. See, e.g., Md. Code Ann., Corr. Servs. § 3-705 (providing for work credits). It appears to be undisputed that because Miller came from Maryland on a writ of habeas corpus ad prosequendum, his period of federal custody on the writ counted *only* against his Maryland sentence and was not credited against his federal sentence as it would have been automatically if the custody had related directly and only to the federal case. See 18 U.S.C. § 3585(b); see also *Pickett v. Warden McKean FCI*, 726 F. App'x 104, 106 (3d Cir. 2018) ("The BOP was . . . correct in not awarding credit for time served by [a defendant] while on loan to federal authorities pursuant to a writ of habeas corpus ad prosequendum."). Thus, for the three years that Miller was in federal custody that federal law ascribed to his Maryland sentence, he lost the chance to earn Maryland credits.

But because ineffective trial counsel never pointed it out, the district court never learned that Miller's federal prosecution caused him to lose Maryland credits and thus spend roughly an extra year in jail. And when the district court did learn about the lost credits in the hearing below, it declared that it didn't matter: According to the district court, it would nonetheless have given Miller *the same* 204-month federal sentence, credits or no credits. As the court explains, the district court's analysis constitutes procedural error.

In most cases where a district court commits procedural error by refusing to consider a necessary factor, the district court can correct its oversight by reevaluating that sentence in light of the missed factor. If it finds the factor insignificant in the total constellation of relevant considerations, it is free to re-impose the original sentence.

But time is different from unquantifiable sentencing factors, such as a defendant's character or the nature of an offense. Here time was mishandled in the initial sentencing because the district court, thanks to the ineffective assistance of counsel, did not make an adjustment for the fact that Miller's federal charges had the direct effect of extending his total time in prison by a year. As counsel put it below, Miller will serve "an extra year of served time [that] is caused by this case, by him being writted in and being in federal custody instead of state custody during the time that he was serving Maryland incarceration." J.A. 904.

In order to reach a sentence reflecting the desired total period of time thought suitable for the federal charge, the district court needs to make an adjustment for direct effects that Miller's federal custody had on the state sentence. See 18 U.S.C. § 3553(a); U.S.S.G. § 5G1.3(c) (2008) (now codified at U.S.S.G. § 5G1.3(d)). To do otherwise would take away "an extra year of this man's life . . . simply because of the fortuity

[] that he is here on paper, federal paper, in this system instead of that system." J.A. 905.

Because this case comes to us as an ineffective assistance of counsel claim, we know what federal sentence the court sought to give (204 months) and how much it actually gave (approximately 216 months—the sum of the 204 months that the district expressly intended and approximately a year added by the federal custody for the Maryland proceedings).

Computing the Maryland credits Miller likely lost will require facts and some estimation, as the credits depend on an inmate's actions, such as performing a work detail. Without a corresponding reduction, Miller's federal sentence would remain unreasonable because it would be self-contradictory.